JACKSON v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

1. **Master and Servant:** ORDINARY RISKS: RAILROAD. When a railroad company is in the habit of receiving and transporting cars laden with timbers and iron rails projecting over the laden cars, the risk arising therefrom is the ordinary one assumed by a brakeman engaged in the company's service.

2. ———: ———: ———. Nor is the foregoing rule inapplicable because the company's train dispatcher directed the brakeman to go with a locomotive and tender on a sidetrack on which the dangerous car stood and with which the tender collided, thereby causing the injury, it not appearing what the duties of the train dispatcher were, nor that he knew of the location of the dangerous car on the sidetrack, or of its being laden with projecting rails.

*Appeal from Bates Circuit Court.*—HON. JAS. B. GANTT, Judge.

REVERSED.

*H. S. Priest* for appellant.

( 1 ) The deceased's contributory negligence should defeat a recovery. This should be so ruled, upon elementary principles, upon an intelligent understanding of the uncontroverted facts. *Darracutts v. Railroad*, 31 Am. & Eng. R. R. Cases, 157. (2) The projection of iron rails, timbers, etc., over the ends of cars, was risk of the service in which the deceased was engaged. Beach on Cont. Neg., sec. 138; *Railroad v. Johnson*, 112 Ind. 355; *Day v. Railroad*, 2 Am. & Eng. R. R. Cases (Mich.) 126; *Railroad v. Plunkett*, 2 Am. & Eng. R. R. Cases (Kan.) 127; *Railroad v. Hussen*, 12 Am. & Eng. R. R. Cases (Pa.) 241; *Railroad v. Brice*, 28 Am. & Eng. R. R. Cases (Ky.) 542; *Railroad v. Gowen*, 31 Am. & Eng. R. R. Cases (Tenn.) 168; *Scott v. Railroad*, 28 Am. & Eng. R. R. Cases (Or.) 414; *Boyle v. Railroad*, 23 N. E. Rep. (Mass.) 827; *Lathrop v. Railroad*, 23 N. E. Rep. (Mass.) 227; *Meyers v. Iron Co.*, 150 Mass. 125; *Kennedy v. Railroad*, 17 Atl. Rep. (Pa.) 7; *Nash v. Steel Co.*, 62 N. H. 406; *Railroad v. Somers*, 9 S. W. Rep. (Tex.) 741; *Woods v. Railroad*, 40 N. W. Rep. (Minn.) 510; *Judkins v. Railroad*, 14 Atl. Rep. (Me.) 735; *Darracutts v. Railroad*, 31 Am. & Eng. R. R. Cases (Va.) 157. (3) The instructions given at the request of the plaintiff are wrong. They affirm a liability without respect to risk of service. They are misleading, in that they refer to abstract principles of law not at all involved in this matter. They affirm a liability with respect to negligence in leaving the car of iron standing upon sidetrack, when the petition concedes that was the proper place for it.

They affirm a liability if the "cars" so loaded were unsafe and dangerous in coupling and uncoupling, without reference to the usual risks attending such work.

*Adams & Buckner* also for appellant.

(1) Where the facts of a case are undisputed, it is a question for the court to determine whether or not the facts proven constitute negligence. *Kelly v. Railroad*, 11 Mo. App. 1; *Yancy v. Railroad*, 93 Mo. 433; *Bell v. Railroad*, 86 Mo. 599; *Zimmerman v. Railroad*, 71 Mo. 476; *Lenix v. Railroad*, 76 Mo. 86; *Moody v. Railroad*, 68 Mo. 470. (2) Where the undisputed evidence shows a clear case of contributory negligence, the duty of the court is to take the case from the jury. Authorities above cited. (3) The act of deceased in assuming the position he did assume in this case under the circumstances was an act of gross negligence. (4) The act of leaving cars improperly loaded on the track was not negligence. (5) The act of loading cars and the act of leaving them loaded upon the track was the act of a fellow servant for which the defendant would not be liable even if it was a negligent act. (6) The deceased was guilty of gross contributory negligence which directly contributed to his death, and the act of which respondent complains was the act of a fellow servant; hence under all the evidence he was not entitled to recover.

*James T. Burney* and *R. T. Railey* for respondent.

(1) It is the duty of defendant to use reasonable and ordinary care in securing competent men, under whom Frank Lee Jackson was required to work; to see that the machinery, track and other appliances, with which he was required to work, were reasonably safe; to warn him of unusual or extreme danger, in the line of his duty, if known to itself, and unknown to

him—in order that he might refuse to incur the hazard of said danger. The failure to perform—through its servants or otherwise—any of the duties aforesaid, on account of which injury might be sustained, would be actionable negligence on the part of defendant. In consideration of the foregoing, said Jackson agreed to assume all the ordinary risks incident to the business in which he was to engage, including the negligence of fellow servants, except where the latter were performing some duty which defendant owed said Jackson. Tested by these propositions, Jackson was killed by the failure of defendant to perform its plain duty. *Paulmier v. Railroad*, 34 N. J. L. 152; *Anderson v. Bennett*, 38 Am. & Eng. R. R. Cases (Oregon) 97, where numerous authorities and precedents are cited and discussed; Wood's Law of Master and Servant [2 Ed.] secs. 354, 355; *Baxter v. Roberts*, 44 Cal. 188. (2) It was the duty of defendant to exercise reasonable care, in seeing that the cars left upon its switch and sidetracks were not in an unsafe and dangerous condition for brakemen who were required to couple and uncouple cars upon said tracks in the night time, and to give warning of their condition, and whoever was required by defendant to represent it, in the performance of the duties aforesaid, occupied the same relation to said Jackson that defendant itself would have occupied, had it been performing its duties aforesaid through its personal representatives. *Gibson v. Railroad*, 46 Mo. 169; *Lewis v. Railroad*, 59 Mo. 499; *Whalen v. Church*, 62 Mo. 328; *Dale v. Railroad*, 63 Mo. 458; *Long v. Railroad*, 65 Mo. 229; *Porter v. Railroad*, 71 Mo. 72; *Hall v. Railroad*, 74 Mo. 298; *Covey v. Railroad*, 86 Mo. 639; *Waldhier v. Railroad*, 87 Mo. 48; *Huhn v. Railroad*, 92 Mo. 450; *Reagan v. Railroad*, 93 Mo. 348; *Gutridge v. Railroad*, 94 Mo. 474; *Bowen v. Railroad*, 95 Mo. 278, and cases cited; *Stephens v. Railroad*, 96 Mo. 212; *Barry v. Railroad*, 98 Mo. 67; *Brown v. Railroad*, 15

Am. & Eng. R. R. Cases, 276. (3) We have demonstrated by the authorities cited under proposition 2, that defendant was guilty of actionable negligence, and failed to perform a personal duty which it owed Jackson. It is immaterial whether the person, to whom they had delegated power to represent them in any duty which they owed him, was a fellow servant of Jackson, or not. We insist, however, that the train dispatcher, who was representing defendant and gave the orders, was not a fellow servant of Jackson. *Smith v. Railroad*, 92 Mo. 359, and cases cited; *Dana v. Railroad*, 92 N. Y. 639; *Darrigan v. Railroad*, 23 Am. & Eng. R. R. Cases (Conn.) 438; *Lewis v. Seifert*, 116 Pa. St. 649, and cases cited; *Flike v. Railroad*, 53 N. Y. 549; *Railroad v. Henderson*, 5 Am. & Eng. R. R. Cases, 529; *McKinne v. Railroad*, 21 Am. & Eng. R. R. Cases, 539; *McKune v. Railroad*, 17 Am. & Eng. R. R. Cases, 389; *Phillips v. Railroad*, 23 Am. & Eng. R. R. Cases, 453; *Phillips v. Railroad*, 64 Wis. 475; *Washburn v. Railroad*, 3 Head (Tenn.) 638; *Sheehan v. Railroad*, 91 N. Y. 332. (4) Deceased being ignorant of the dangerous condition of the car, and it being in the dead hour of night, it was the duty of defendant to notify him of its situation and condition, in order that he might refuse to assume the risks of said danger; and its failure to do so was negligence. *Porter v. Railroad*, 60 Mo. 160; *Steahlendorf v. Rosenthal*, 30 Wis. 675; *Wedgwood v. Railroad*, 41 Wis. 478; 44 Wis. 44; *Bessex v. Railroad*, 45 Wis. 480; *Railroad v. Plunkett*, 25 Kan. 195; *Brown v. Railroad*, 15 Am. & Eng. R. R. Cases (Kan.) 275; *Porter v. Railroad*, 71 Mo. 72. (5) Deceased had a right to assume that defendant had left its sidetracks in a reasonably safe condition to work on, when it sent him in to do the coupling mentioned in evidence, on a dark night, and without warning. *Gibson v. Railroad*, 46 Mo. 169; *Lewis v. Railroad*, 59 Mo. 495; *Dale v. Railroad*, 63 Mo. 459; *Long v. Railroad*, 65 Mo. 229; *Parsons v. Railroad*, 94 Mo. 292;

*Railroad v. Plunkett*, 2 Am. & Eng. R. R. Cases, 138; *Brown v. Railroad*, 15 Am. & Eng. R. R. Cases, 275; *Railroad v. Pinto*, 15 Am. & Eng. R. R. Cases (Texas) 286; *Haugh v. Railroad*, 31 Am. & Eng. R. R. Cases, 731, and cases cited; *Anderson v. Bennett*, 38 Am. & Eng. R. R. Cases (Ore.) 87; *Railroad v. Kier*, 38 Am. & Eng. R. R. Cases (Kan.) 122. (6) When it appears from the evidence that deceased, although negligent, would have suffered no injury had proper care and caution been observed by defendant, plaintiff is entitled to recover. The evidence in this case shows that Jackson could have ridden upon the brakebeam of the tender in safety, and could have coupled onto the boxcar, had it not been for the iron rails projecting over the end of said flat car. Jackson's conduct was not, therefore, the proximate cause of the injury. *Brown v. Railroad*, 50 Mo. 465, 468; *Bergman v. Railroad*, 88 Mo. 678; *Dunkman v. Railroad*, 95 Mo. 244; *Meyers v. Railroad*, 59 Mo. 227; *Railroad v. McCally*, 21 Pac. Rep. (Kan.) 574; *Railroad v. Kean*, 3 Cent. Rep. (Md.) 716. (7) Even if the deceased was improperly on the brakebeam of the tender, which is by no means conceded, yet he was there for the purpose of expediting the business of his principal, and not for the purpose of coupling cars from that position; his acts, therefore, had no connection with the cause of the injury, to-wit, the car being improperly loaded and left standing on the track where Jackson was required to perform his duty, without any warning of its dangerous condition, and in the dead hour of night. *Brown v. Railroad*, 50 Mo. 464; *Wagner v. Railroad*, 97 Mo. 523; Pierce on Railroads, 317. (8) If the evidence shows a state of facts from which different minds might fairly and honestly draw different conclusions as to what was the controlling or direct cause of the matter in controversy, it is a question to be submitted to the jury, although such facts are undisputed. *Clemens v. Railroad*, 53 Mo. 366; *Norton v. Ittner*, 56 Mo. 351;

*Lewis v. Railroad,* 59 Mo. 495 ; *Dale v. Railroad,* 63 Mo. 460 ; *Stoddard v. Railroad,* 65 Mo. 515 ; *Kelley v. Railroad,* 70 Mo. 604; *Nagel v. Railroad,* 75 Mo. 653; *Loewer v. City,* 77 Mo. 431 ; *Flynn v. Railroad,* 78 Mo. 196 ; *Scoville v. Railroad,* 81 Mo. 434. (9) Where the evidence is undisputed, and fair-minded men of ordinary intelligence might honestly differ as to whether or not such facts show negligence upon the part of defendant, then it is peculiarly a question for the jury, and the court has no right to dispose of the matter as a proposition of law. *Kennayde v. Railroad,* 45 Mo. 255 ; *Huhn v. Railroad,* 92 Mo. 450 ; *Tabler v. Railroad,* 93 Mo. 85 ; *Chouteau v. Iron Works,* 94 Mo. 399 ; *Stephens v. Railroad,* 96 Mo. 212 ; *Wagner v. Railroad,* 97 Mo. 523 ; *Barry v. Railroad,* 98 Mo. 71 ; *Adams v. Railroad,* 100 Mo. 555. (10) The testimony of the brakemen of defendant, as experts, was properly rejected. *Gavish v. Railroad,* 49 Mo. 276 ; *Koons v. Railroad,* 65 Mo. 597 ; *Gutridge v. Railroad,* 94 Mo. 473 ; *Muldowney v. Railroad,* 36 Iowa, 472.

BLACK, J.—The plaintiff is the widow of Frank L. Jackson. She prosecutes this suit to recover damages for the death of her husband, who died from injuries received while in the employ of the defendant as a brakeman.

The evidence discloses the following facts : Jackson was an experienced brakeman in yards and on trains. He and his crew made their regular trips over the defendant's branch road from Pleasant Hill to Nevada, both points being in this state. On the occasion in question they left Pleasant Hill with their freight train about one o'clock and reached Harrisonville about two o'clock A. M. At that place the conductor of the train received orders from the train dispatcher to take into his train some cars which were standing on what is called the mill track, which was the third sidetrack south of the main track. The mill track was used for leaving

thereon loaded cars, and also for storing empty cars. The record does not show what the duties of the train dispatcher were, but we infer he was simply a station agent at Harrisonville. The conductor gave the order, which he received from the train dispatcher, to his brakeman. Jackson uncoupled the engine and tender from the train then standing on the main track, got upon the engine, and under his directions the engine and tender moved forward to the switch which led to the mill track. He opened that switch, got upon the rear brake-beam of the tender, and directed the engineer to back in on that track. After passing some ten carlengths, he gave the engineer a signal with his lantern to back up. Jackson was then looking towards the engine. At that moment the tender struck a flat car loaded with iron rails. Some of the rails projected over the car from ten to eighteen or more inches, so that Jackson was caught between the ends of the rails and the tender, and received the injuries from which he died. The flat car stood between the tender and the cars which were to be placed in the train. The presence of the flat car was unknown to the conductor and to the engineer and to Jackson. It was a dark night, and it is evident Jackson did not see the flat car until the tender ran against it. The evidence does not show when nor how this car got on the track, nor does it appear that the train dispatcher knew that the rails projected over the car, or even that there was such a car on the track.

The plaintiff introduced the conductor as a witness, and the defendant read in evidence the depositions of the engineer and two brakemen, which depositions had been taken and filed in the case by the plaintiff. The evidence of these witnesses tends to show that the rails had shifted, that is to say, had slipped over the end of the car. Their evidence shows, beyond all doubt, that it was a daily occurrence to find iron rails and timbers projecting over the cars upon which they were loaded ; that the defendant and other railroads always receive

cars thus loaded; that cars loaded with projecting rails and timbers were coupled and uncoupled and placed in trains at the yards at Pleasant Hill where the deceased had been employed. The engineer says he found the iron extending over the flat car ten to fifteen inches, but does not know how it was loaded; that the engine struck the car hard enough to have slipped the iron that distance. After the accident the conductor and others placed one end of a timber against the engine tank and the other against the rails, and in that way pushed them back on the car.

There is an averment in the petition to the effect that Jackson got on the brakebeam of the tender by the order of the conductor; but the proof is clear that the conductor gave no such order. Jackson placed himself in that position of his own volition, and there is much evidence tending to show that this was a negligent act on his part, and that he should have walked ahead to see that the way was clear.

The first, and indeed the most important, question is, whether the plaintiff made out a *prima facie* case. If she did not, then the instruction in the nature of a demurrer to the evidence should have been given.

Counsel for the plaintiff, in an elaborate brief, have cited us to a vast number of cases relating to the duty of the master to furnish the servant with safe and suitable appliances, including tracks and cars; but we cannot see that these cases have any direct bearing upon the question involved in this case. The track was not out of repair, nor was the flat car deficient in any respect. The case must stand or fall upon the averment that the defendant was guilty of negligence in leaving this car, loaded as it was, upon the sidetrack, and on the further allegation that defendant ordered Jackson to go upon that track to get the desired cars without informing him of the flat car and the condition of the rails.

The first question then is, was the defendant guilty of negligence in leaving this car, loaded as it was, upon the sidetrack. The law is well settled that the servant assumes those risks which are incident to the business which he undertakes to perform. For injuries arising from ordinary risks attending the particular business, the master is not liable. The ordinary risks of a particular business are those which are part of the natural and ordinary method of conducting that business, although they may fairly be called extraordinary, with reference to a different business. 1 Shear. and Red. on Neg. [ 4 Ed.] sec. 185.

Now the proof in this case is all to the effect that cars were daily taken into trains, loaded with building and other timbers and with railroad iron, so that the timbers and rails project over the cars. Indeed, this is but a matter of common observation. It is also shown that rails and timbers loaded upon cars will slip back and forth. The business of a brakeman is beset with many dangers which are incident to his business, and these risks arising from cars loaded with projecting timbers and rails are risks incident to this particular business, and as to that business are not extraordinary. It must, therefore, follow that the defendant was not guilty of any negligence either in hauling this car loaded with railroad iron, or in allowing it to stand upon its sidetrack. We think this conclusion is supported by good authority as well as by reason.

In *Northern Central Ry. Co. v. Husson*, 101 Pa. St. 1; 12 Am. & Eng. R. R. Cases, 244, a servant of the defendant company, while engaged in coupling cars on a work train, was killed by having his head caught between the ends of bridge irons which projected beyond the ends of the cars on which they were loaded. The regulations of the company, known to deceased, required persons in coupling such cars to stoop and couple from beneath by reaching up. The mode of loading the cars adopted in that case was usual on that

road. It was held there was no evidence that the risk run by deceased was an extraordinary one.

A head note to the case of *A., T. & S. F. Ry. Co. v. Plunkett*, 25 Kansas, 188, which was prepared by the judge writing the opinion, as we are informed, is in these words : "Where a railroad company is in the habit of receiving other railroad cars, loaded with timbers which project over the ends of the cars, so as to make it dangerous for anyone except a careful, skilful and prudent person to attempt to couple the cars together, it is not negligent for the railroad company to order and permit such a person, who has been in the employ of the railroad company doing that kind of business for about five months, to attempt to make such a coupling, where the attempt is to be made in broad daylight, although it may be raining at the time." See, also, *Scott v. O., R. & N. Co.*, 14 Oregon, 211, and *Day v. Railroad*, 42 Mich. 523. These cases, we think, support the conclusion which we have before stated, namely, that, where a railroad company is in the habit of receiving and transporting cars loaded with timbers and iron rails which project over the cars upon which they are loaded, the risks arising from such projecting timbers or rails is nothing more than an ordinary risk assumed by the brakeman.

But it is insisted that the train dispatcher and Jackson were not fellow servants, and that the train dispatcher was a vice-principal under the ruling of this court in *Smith v. Railroad*, 92 Mo. 359, and that the act of this man in ordering Jackson to go on the mill track, without informing him of the dangerous condition of the rails on the flat car, was the act of the defendant. This line of argument would at first seem to be well founded. But it has but little merit when we come to look into the facts as disclosed by the record.

In the first place it does not appear what the duties of this so-called train dispatcher were. So far as we can see he was nothing more than a station agent. It nowhere

appears that it was his duty to examine the cars left on the sidetrack, nor does it appear that he knew this flat car was on the track, much less that it was loaded with projecting rails. The evidence shows that he informed the conductor of the freight train of the fact that there were certain cars on the mill track to be taken out and placed in the train. The numbers of the cars were given to the brakemen, and they set about the work of getting them out in their own way, and according to their own judgment. The deceased was bound to know that this mill track was used for storing such cars, loaded and unloaded, as defendant was in the habit of using on its road. There is no evidence showing, or tending to show, that the train dispatcher or the conductor or anyone else said or intimated that the cars to be taken out were the only cars, or the first cars, on the sidetrack. In this state of the case it was the duty of deceased to look out and see that the way was clear, and we cannot see that this unfortunate accident was due to anything more than the want of care on the part of the deceased.

The judgment in favor of the plaintiff is, therefore, simply reversed. BARCLAY, J., dissents · the other judges concur.