ALCORN v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

IN BANC.

1. **Negligence:** INJURY TO SERVANT: EVIDENCE OF PRECAUTION AFTER ACCIDENT. In an action against a railroad for injuries to a switchman while uncoupling moving cars, caused by his foot being caught between switch rails at a point where the block between them was worn away by use, evidence that within

VOL. 108—6

Alcorn v. The C. & A. Ry. Co.

twenty-four hours after the accident the defective block was replaced by a new one is incompetent to originate an inference or implied admission of negligence, and its admission is sufficient ground for reversal of a judgment against defendant. [ Per SHERWOOD, C. J., BARCLAY, GANTT, MACFARLANE and THOMAS, JJ., concurring.]

2. ———: EVIDENCE: GENERAL OBJECTION. A general objection to such evidence as being "incompetent, irrelevant and immaterial" is sufficient to exclude it, where it is wholly inadmissible and misleading. [Ibid.]

3. ———: PRACTICE: DEMURRER TO EVIDENCE. On demurrer to evidence, plaintiff is entitled to have the facts viewed as favorably to him as the testimony permits, and to enjoy the benefit of every reasonable inference in his favor therefrom. [Per BARCLAY, J.; all concurring except SHERWOOD, C. J.]

4. Master and Servant: CONTRIBUTORY NEGLIGENCE: ASSUMPTION OF RISKS. There is a clear distinction between the defenses of contributory negligence and the assumption of risks. [Ibid.]

5. ———: CARE REQUIRED OF SERVANT. A servant is bound to use ordinary care to avoid injury even though the danger thereof arises from risks unusual to the service. [Ibid.]

6. ———: ———: KNOWLEDGE OF DANGER. Knowledge of a danger is an important element to consider on the issue of negligence, but is not always decisive thereof. [Ibid.]

7. ———: MASTER'S DUTY. The master's duty requires of him ordinary care to supply and maintain reasonably safe and sufficient appliances necessary for the servant's work. [Ibid.]

8. Negligence: QUESTION FOR JURY, WHEN. The plaintiff while uncoupling moving cars at night was injured by having his foot caught between switch rails, insufficiently blocked ; he was familiar with the railroad yard and tracks where the accident happened, but had no actual knowledge of the defective block ; held, that the question of his negligence in the circumstances was for the jury. [Ibid.]

9. ———: RAILROAD: ABANDONMENT OF RULES: HARMLESS ERROR. Where the trial court excluded evidence of a rule forbidding employes "jumping on or off trains, or engines in motion, and getting between cars in motion to uncouple them," but the testimony for defendant showed a practical abandonment of the rule by employes and their managing superiors, the exclusion of that evidence was not prejudicial error. [SHERWOOD, C. J., GANTT and MACFARLANE, JJ., dissenting.]

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*Wash. Adams* and *Lathrop, Smith & Morrow* for appellant.

(1) The testimony as to the finding of the new block, the next evening after the accident, between the rails where plaintiff's foot was caught, was clearly incompetent to prove prior negligence on the part of the defendant. The overwhelming weight of authority is against its admissibility, and the decisions of this court are to the same effect. *Hipsley v. Co.*, 88 Mo. 348; *Brennan v. St. Louis*, 92 Mo. 482. (2) Nor was the evidence competent upon the issue of the protective character of proper blocking. (3) The last question asked Lamoreaux called for the opinion of the witness, which was incompetent. His competency or qualifications as an expert were alone admitted. *Brown v. Railroad*, 1 How. (Ct. App. Cas. N. Y.) 52, 115; Rogers on Expert Evidence, secs. 8, 9, 10, 15; Lawson on Expert Evidence, rule 24, pp. 94–100; *Gavisk v. Railroad*, 49 Mo. 274; *Koons v. Railroad*, 65 Mo. 592; *Penn Co. v. Conlan*, 101 Ill. 93; *Taylor v. Railroad*, 39 Am. &. Eng. R. R. Cases, 259. (4) General objections of "irrelevancy and incompetency" are sufficient, where the evidence is incompetent and irrelevant, for any purpose. Hayne on New Trial & Appeal, sec. 105, p. 294; *Merritt v. Leaman*, 2 Selden, 168; *Nightingale v. Scannell*, 18 Cal. 315; *State v. Flanders*, 38 N. H. 324; *Pool v. Devers*, 30 Ala. 672; *Rogers v. Troost*, 51 Mo. 470; *Peck v. Chouteau*, 91 Mo. 138. (5) The objections to the evidence of Lamoreaux were not waived by introducing other evidence in disproof of it, in order to break its force. *Costigan v. Trans Co.*, 33 Mo. App. 269; *Martin v. Railroad*, 9 N. E. Rep. 505; s. c., 103 N. Y. 626. (6) Exclusion of rule 55 as a

whole was improper. It all ought to be read together. That part of it relating to getting between cars while in motion to uncouple them, which was expressly pleaded, was undoubtedly both competent and relevant. If objected to on the ground that the whole was offered, and only a part was competent, that objection, if sustained, might have been obviated. *Hill v. Sturgeon*, 28 Mo. 323 ; *Wilkins v. Railroad*, 13 S. W. Rep. (Mo.) 893 ; Thompson on Trials, secs. 696, 843 ; *Waters v. Dashiell*, 1 Md. 455 ; *Levy v. Taylor*, 24 Md. 282 ; *Driscoll v. Damp*, 16 Wis. 106 ; *Miller v. Van Tassel*, 24 Cal. 459 ; *Ins. Co. v. Knight*, 6 Wharton, 327 ; *Dennis v. Barber*, 6 S. & R. 420. ( 7 ) It is the duty of the servant to learn the rules which have been adopted by the master for his government and safety either for his own protection or the safety of its employes. *Pa. Co. v. Stoelke*, 104 Ill. 201 ; *Seese v. Railroad*, 39 Fed. Rep. 487 ; *Aldrich v. Monroe*, 60 N. H. 118 ; *Railroad v. Langdon*, 92 Pa. St. 21 ; *Sedgwick v. Railroad*, 73 Iowa, 158; *Railroad v. Rozenzweig*, 26 Am. & Eng. R. R. Cases, 489. ( 8 ) The rules and usages of the company need not be pleaded ; they are mere evidence bearing on the question of negligence. *Henry v. Ryles*, 66 Iowa, 52. ( 9 ) Nor need knowledge of a usage be shown by direct evidence. Knowledge of a rule or usage may be inferred from notoriety of the same. Lawson on Usages & Customs, sec. 21 ; *Parker v. Railroad*, 83 Ga. 539. ( 10 ) If rule 55 was abandoned or waived, the same should have been pleaded. *Pier v. Heinrichoffen*, 52 Mo. 333 ; *Bank v. Hatch*, 78 Mo. 24 ; *Nichols v. Larkin*, 79 Mo. 264 ; *Lanitz v. King*, 93 Mo. 513. ( 11 ) The plaintiff tendered no issue either by pleadings, evidence or instructions as to the habitual disregard of the rule, to the knowledge of defendant's representative officers. *Railroad v. Propst*, 83 Ala. 518 ; *Sloan v. Railroad*, 12 S. E. Rep. 179 ; *Bennett v. Railroad*, 49 N. W. Rep. 408 ; *Schaub v. Railroad*, 16 S. W. Rep. 924 ; *Russell v. Railroad*, 47 Fed. Rep.

204. (12) The demurrer to the evidence of plaintiff should have been sustained. There was absolutely no evidence of actual notice to defendant of the defective condition of the block between the rails where plaintiff was injured. (13) Where defendant was shown to have blocked the space originally, the burden was upon the plaintiff to show its actual notice of the defective condition of the block, or that such defective condition had existed for so long a time that such notice should be inferred. *Laney v. Railroad*, 83 Mo. 466; Wood's Master & Servant, sec. 368. (14) In an action by a servant for personal injuries, caused by an alleged defect in the master's machinery, the complaint will be dismissed in the absence of evidence to show how long the defect has existed. *Oehme v. Cook*, 7 N. Y. S. 764; *Wright v. Co.*, 25 N. Y. 562. (15) Defendant's other refused instructions all correctly declared the law, and should have been given. They were not covered by any instructions given in the case. *Keeghan v. Kavanaugh*, 62 Mo. 230; *Flynn v. Railroad*, 78 Mo. 205; *Siela v. Railroad*, 82 Mo. 430.

*Beebe, Randolph & Watson* for respondents.

(1) Appellant was bound to provide reasonably safe and suitable blocks for the intended purpose, and to maintain the same in a reasonably safe condition. In this case there was no attempt on the part of the appellant to contradict the testimony offered by respondent showing that the block where he was injured was an old one, and had been permitted to get so worn that it was of no use as a protection against foot-catching. *Lewis v. Railroad*, 59 Mo. 495; *Huhn v. Railroad*, 92 Mo. 440. (2) The testimony of Lamoreaux, appellant's switchman, to the effect that he saw a new block between the rails at the point where respondent was injured, the next day; that it filled the space between the rails, and that with such a block it would not be

possible for a switchman to catch his foot, was admissible. Likewise the testimony of Kennedy to the effect that he also saw the block in there the next day, and by actual experiment could only catch the sole of his shoe, but not the foot. *First.* One issue upon which much testimony was given was whether blocking that filled the space between the fixed rails in defendant's yards was an effective device against foot-catching. The testimony of these witnesses tended to show that such blocking was useful and efficient, and that the absence of sufficient blocking was the proximate cause of the injury. *Alpern v. Churchill*, 53 Mich. 607; *Brennan v. St. Louis*, 92 Mo. 482. *Second.* We also contend that such testimony was admissible as amounting to an implied admission on the part of the railroad company, that such blocking was useful, efficient and necessary, and that the place was out of repair. *Reed-hans v. Conway*, 126 Mass. 377; *Martin v. Towle*, 59 N. H. 32; *Railroad v. Renz*, 53 Ga. 126; *Railroad v. Gleason*, 69 Ga. 200; *Railroad v. Henderson*, 51 Pa. St. 815; *Railroad v. McElwee*, 67 Pa. St. 311; *McKee v. Bidwell*, 74 Pa. St. 218; *Emporia v. Schmiddling*, 33 Kan. 485; *Dale v. Railroad*, 83 N. Y. 472. *Third.* The objection to this testimony was general, and the record expressly shows that no objection was made to the competency of Lamoreaux to express an opinion as to whether a switchman's foot could be caught with such a block as he found there the next day. If, therefore, this testimony was admissible under the first head but not admissible under the second head, it follows it should not have been excluded. If the appellant's counsel feared that the jury might infer all the elements of prior negligence from this testimony, he should have made his objection more specific, or asked an instruction limiting the scope and effect of the testimony. *Brennan v. St. Louis, supra.* (3) The court ruled properly in excluding rule 55 for the following reasons: *First.* When offered, it was not under any proper construction

relevant to any issue in the case, as there was no evidence that the respondent violated said rule. *Second.* Appellant having pleaded one clause of the rule, only that part was responsive to the answer, and the rule should not have been admitted as an entirety. *Jackson v. Hardin*, 83 Mo. 175. *Third.* The court should not have admitted said rule as offered because some of its provisions are unreasonable, contrary to law, and against public policy, and its exclusion as an entirety was not error. *Ball v. Railroad*, 83 Mo. 574; *Rice v. Railroad*, 63 Mo. 314; *Railroad v. Orr*, 8 S. Rep. 17; *Muller v. Jackson*, 40 N. W. Rep. 565; *Smith v. Bank*, 104 Pa. St. 518. ( 4 ) Appellant did not produce sufficient evidence primarily to raise a presumption that notice of the rule had been brought home to respondent. Taking the evidence as a whole, there was a stronger presumption that he had never seen it than that he had. It was a question for the court to decide whether enough evidence had been introduced to raise such a presumption before admitting the rule, if otherwise relevant. The court did not err in holding that no such presumption arose upon the testimony adduced. Wood on. Master & Servant [ 2 Ed.] 187; Shearman & Redfield on Neg. [ 4 Ed.] 203; *Railroad v. Plunkett*, 25 Kan. 188; *Railroad v. Springstein*, 21 Pac. Rep. 774; *Railroad v. Ryals*, 11 S. E. Rep. 499; *Railroad v. Lamathe*, 13 S. W. Rep. 194; *Wheeler v. Mfg. Co.*, 135 Mass. 294; *O' Connor v. Adams*, 120 Mass. 427. ( 5 ) The court did not err in refusing to instruct for the defendant. The great weight of the testimony showed that the respondent was pursuing the proper and customary course, and was exercising proper care.

SHERWOOD, C. J.—This cause has been thrice argued, and will be found reported in 14 S. W. Rep. 943, and 16 S. W. Rep. 229. When argued the second time the following statement of the case and opinion were filed:

Alcorn v. The C. & A. Ry. Co.

" STATEMENT.

" This cause has been reargued ; it is an action for damages laid at the sum of $15,000.

" The main ground upon which plaintiff relied for recovery was the insufficient blocking of the tracks of the defendant, which was claimed · to be the proximate cause of the injury, and that the accident in question occurred while a train of defendant's cars was in motion, and while defendant was in the act of uncoupling one of the cars of such train, his foot being caught between the rails on the track, by reason of an insufficient block between the rails, and in consequence being knocked down by that train.

" The answer was a general denial as well as a plea of contributory negligence, alleging that plaintiff was familiar with the locality in question ; knew the condition of the tracks, being employed in the yards for several months prior to the accident, and failed to complain ; and the answer further set forth that the defendant got in between the cars while in motion, in violation of the rules and regulations of the defendant company, in that behalf made and provided, etc.

" The rule to which reference was made in the answer is the following : 'Rule 55. Great care must be exercised by all persons when coupling cars. Inasmuch as the coupling apparatus of cars and engines cannot be uniform in style, size or strength, and is liable to be broken, and, from various causes, to render it dangerous to expose the hands, arms or persons of those engaged in coupling between them, all employes are enjoined, before coupling cars or engines, to examine so as to know the kind and condition of the drawhead, drawbar, link and coupling apparatus, and are prohibited from placing in the trains any car with a defective coupling until they have first reported its defective condition to the yardmaster or conductor. Sufficient time is allowed and may be taken by employes in all cases to make the examination required. Coupling by hand is

strictly prohibited in all cases where a stick can be used to guide the link or shackle, and each yardmaster, switchman, brakeman or other employe who may be expected to couple cars is required to provide himself at all times with a stick for that purpose. Every employe is required to exercise the utmost caution to avoid injury to himself or to his fellows, and especially in the switching of cars, and in all movements of trains; in doing which work each employe must look after and be responsible for his own safety. Jumping on or off trains or engines in motion, getting between cars in motion, or to uncouple them, and all similar imprudences, are dangerous, and in violation of duty. All employes are warned, that if they commit them it will be at their own peril and risk. Every employe is hereby warned that before exposing himself in working or in being on the tracks or grounds of the company, or in working with or being in any manner on or with its cars, engines, machinery or tools, he must examine for his safety the condition of all machinery, tools, tracks, engines, cars, or whatever he may undertake to work upon or with, before he makes use or exposes himself on or with the same, so as to ascertain, so far as he reasonably can, their condition and soundness, and he is required promptly to report either to the division superintendent, or to the agent who may be his immediate superior in office, any defect in any track, machinery, tools or property of the company affecting the safety of anyone in using or operating upon or with the same. The object of this rule is to protect employes from suffering personal injury from any cause. While the company will be responsible to each one for the discharge of all its duties and obligations to him for any fault or neglect of its own, or of its board of directors or general officers, which are the approximate cause of injury, yet it will not be responsible to him for the consequences of his own fault or neglect, or of that of any other employe of the company, whether they or either of them are superior to him in authority, as conductor, foreman

or otherwise or not; it being the right and duty of every employe, under all circumstances, to take sufficient time before exposing himself to make such examination as is here required, and refuse to obey any order which would expose him to danger. No person who is careless of others or of himself should be continued in the service of this company. Every case of personal injury must be promptly reported in writing to the division superintendent, stating the names and residences of all witnesses, and all the particulars of the occurrence.'

## "OPINION.

"I. The first point for discussion is whether the testimony of Lamoreaux was admissible, as to having seen the next day a new block between the rails at the point of the accident, which block so filled the space between the rails as to render another like accident impossible. That testimony of subsequently occurring events, like the substitution of a new, for the old, block, is inadmissible for the purpose of originating an inference or implied admission of negligence, because of failure to make the substitution at an earlier period, is supported by abundant authority as shown by the briefs of defendant's counsel; and this court has announced the same doctrine. *Hipsley v. Railroad*, 88 Mo. 348; *Brennan v. St. Louis*, 92 Mo. 482.

" A different view from the one here asserted obtains in some jurisdictions, but obviously such a theory of the law places a virtual interdict upon a corporation or individual promptly making needful improvements or repairs when an accident occurs, for fear such repairs or improvements will be construed into a tacit admission of prior negligence in failing to make them before, and, thus, to have prevented the litigated injury.

"II. But it is objected that, in any event, the testimony in question was admissible for another purpose, to-wit: To establish the protective character of proper blocking, and, therefore, that a general objection to

such testimony of its being 'incompetent, irrelevant and immaterial' was insufficient; that the objection should have been special. There are several answers to this contention: In the *first* place, there was no such issue raised by the pleadings; in the *second* place, not a particle of testimony was offered to show *who* substituted the new for the old block; the necessity for which preliminary testimony is virtually recognized in *Brennan v. St. Louis, supra; third,* other testimony could readily have been introduced to show the necessity for a proper block, and the evident and only object of the controverted testimony was to convict the defendant company of a confession of negligence because of making repairs; and, *fourth,* the testimony 'for these reasons being wholly inadmissible as well as misleading, a general objection was sufficient. *State v. Meyers,* 99 Mo. *loc. cit.* 120. As is aptly said in *Nalley v. Carpet Co.,* 51 Conn. *loc. cit.* 532: 'If the subsequent act is made to reflect back upon the prior one, although it is done upon the theory that it is a mere admission, yet it virtually introduces into the transaction a new element and test of negligence which has no business there, not being in existence at the time.'

"Touching similar evidence, it was said in a recent case in this court: 'This evidence was not admissible to show negligence on the part of the city, for that must be made out by proof of the condition of the street and knowledge thereof by the city at the time the injury occurred.' *Brennan v. St. Louis, supra.*

"III. It is contended that the trial court properly refused to admit in evidence rule 55 of the defendant company, because the same had not been pleaded. This contention is grounded in error. That portion of the answer in reference to the rule is as follows: 'Defendant, for further answer, says that plaintiff received the injury complained of in his petition in consequence of getting between the cars while in motion for the purpose of uncoupling them, in violation of his

duty and of the rules and regulations of the defendant in that behalf made and provided.'

"There was no manner of necessity for setting forth at length the rule referred to. This fact stands forth conspicuously when two sections of our code of civil procedure are considered: One providing that ' only the substantive facts necessary to constitute the cause of action or defense shall be stated' ( R. S. 1889, sec. 2055 ); the other, that 'no party shall be required to state evidence in his pleading or to disclose therein the means by which he intends to prove his case.' R. S. 1889, sec. 2060. Our rulings upon this statute have been uniform. *See v. Cox*, 16 Mo. 166 ; *Lessing v. Sulzbacher*, 35 Mo. 445 ; *Gates v. Watson*, 54 Mo. 585 ; *Sanders v. Anderson*, 21 Mo. 402 ; *Alexander v. Campbell*, 74 Mo. 142.

"IV. But, in order to the introduction of the rules or regulations of the company in evidence, it was by no means necessary to have even so much as referred to them in the answer. *Logan v. Railroad*, 77 Mo. 663, and cases cited.

"On this point it is said by the supreme court of a sister state : 'It is proper to say here, in view of a new trial, that the claim made by counsel for defendant, that it is necessary to plead rules of the company, or any usage as to the manner of the performance of duty, in order to authorize their introduction in evidence, cannot be sustained. These rules and usages are mere evidence bearing upon the question of negligence of the defendant or its employes, and the care and diligence of the plaintiffs.' *Henry v. Railroad*, 66 Iowa, 52.

"V. Another ground of objection successfully urged to the introduction of rule 55 in evidence was: 'Because no knowledge of the existence of the rule had been brought home to the plaintiff." But the evidence showed that the rule had been in existence for years on the railroad of the defendant, and that plaintiff, in consequence of serving the defendant company for several

years in different capacities, had ample opportunities of becoming acquainted with it.

"The evidence in this cause tends to show that the rule was extensively distributed among the defendant's employes, extensively posted in the defendant's depots and switch-houses as a separate placard, and special attention called thereto, on the face of the time cards. Upon such a basis of facts the inference could have been legitimately drawn by the jury had the rule been admitted in evidence, that the defendant had become acquainted with the rule. The long-continued existence of a custom or rule may be shown in order to form an inferential basis that an employe was not ignorant of it. *Pennsylvania Co. v. Stoelke*, 104 Ill. 201 ; *Seese v. Railroad*, 39 Fed. Rep. 487; *Railroad v. Rosenzweig*, 26 Am. & Eng. R. R. Cases, 489.

"Now, if it be true that it is the duty of a railroad company to make regulations for the proper conducting of its business as asserted in *Reagan v. Railroad*, 93 Mo. 348, then it would seem incumbent on the employes of such company to acquaint themselves with the rules thus of necessity established. Indeed, it would be impossible for employes properly to discharge their duties without becoming conversant with the rules relating to their obligations of service to the company. In numerous instances it has been held that *passengers* must equip themselves with a sufficient knowledge of the regulations of the common carrier which transports them from place to place (26 Am. & Eng. R. R. Cases, *supra, loc. cit.* 493 ) ; and sound reasoning would seem to lay an employe under a greater stress of necessity and of duty of becoming acquainted with rules, the observance of which would promote not only his own safety, but, as well, those with whom he jointly labors, and that having sufficient opportunity therefor, that the inference should be drawn that he did not remain ignorant of that which the highest promptings of duty

and self-interest demanded he should know ; and so the point has been ruled.

"Thus in *Parker v. Railroad*, 83 Ga. 539, it is said : 'There was sufficient evidence that the rule book, admitted in evidence, contained the rules in force when the plaintiff was injured, and whether he had knowledge of them or not was a question not going to the admissibility of the rules, but to their binding effect upon his conduct.' So, also, in *Railroad v. Askew*, 7 South Rep. ( Ala.) 823, where a plaintiff was charged with contributory negligence in not using coupling-sticks, as required by a rule of the company, and he denied all knowledge of such rule, it was held competent to introduce the rule on that subject.

"In *Railroad v. Lucado's Adm'r*, 10 S. E. Rep. ( Va.) 422, the court, after quoting rule 107 of the train rules, says on page 423 : 'These rules were in force, and had been for several years, when the accident occurred, although they had not been formally promulgated by the receiver after his appointment. They had been printed and copies of them had been duly furnished to section foreman, Jennings among the number, for the guidance of themselves and the men under their charge. The deceased had been in the employ of the company as a section hand for many months prior to the accident, and the presumption is that he was acquainted with the rule above quoted. At all events, the fair inference from the record is that he had reasonable opportunity to become acquainted with it, which, for the purposes of the present case, is equivalent to actual knowledge.'

"In *Alexander v. Railroad*, 83 Ky. 589, the court says on page 598 : 'That appellant was not furnished with a copy of the printed rules, and was ignorant of their existence, did not constitute sufficient reason for rejecting them as evidence in this case, and they were properly admitted ; for it was his duty to acquaint himself with those rules, which manifestly he might have done by the use of ordinary diligence.'

"VI. Nor can it be urged in this court for the first time that the rule in question was properly excluded, because of its abandonment by defendant prior to the accident. Because the reply of plaintiff was a general denial of the allegations of the answer. This method of pleading only put in issue the violation of rule 55. If plaintiff desired to put in issue the point, whether the rule had been waived or abandoned, he should have so pleaded it in his reply. *Kersey v. Garton,* 77 Mo., *loc. cit.* 647, and cases cited; *Lanitz v. King,* 93 Mo. 513.

" The result is that, as at first ordered, we reverse the judgment and remand the cause."

VII. We adhere to the conclusions reached as announced in the foregoing opinion; but inasmuch as this cause has been transferred to the court *in banc,* and ably argued here, it has been thought appropriate to add some additional observations, especially as it has been very strenuously insisted that the defendant's demurrer to the evidence should have been granted.

That the plaintiff was perfectly familiar with the yards where he was engaged in working, the tracks and all their surroundings, living, as he did, in their immediate vicinity, and familiar with the manner in which the defendant company blocked its tracks and especially familiar with the "movable switch" that connected with all the tracks running north and south, at which locality the accident occurred, is abundantly established by the testimony. He had been engaged in various railroad employments and capacities for some two years; had worked as day switchman and night switchman in those yards, some six or eight months, and for some six weeks prior to the accident had worked there as night switchman. He was perfectly familiar with the methods the defendant company pursued in blocking its tracks, and he knew that the blocks thus used suffered rapid deterioration in consequence of such use, the flanges of the carwheels cutting into and wearing

away the blocks; and this wearing away process was greater by far at the point of the accident than elsewhere, as the bulk of the switching occurred there, and the bulk of his work both when working as a day switchman and as a night switchman was done there. Yet, in circumstances such as these, at a dangerous locality that he was accustomed to go over from ten to one hundred times a day or night without directions from anyone so to do, he goes in between moving cars and makes three futile attempts to uncouple them, when by a single swing of his lantern, as he states himself, he might have caused the engineer who was under his control to have stopped the train within three carlengths; but he does not cause the cars to be stopped, though he knew the danger, and he gives as a reason for not signaling the engineer that he " did not want him to stop," * * * that "he could have gotten the link out in half the time it would have taken to have signaled him to stop." With his lantern in his hand, one glance would have shown him where he was, and guided his footsteps aright; but he failed to look, when by looking he might have averted the danger; but instead of that he went blundering on; and in answer to the question why he did not step outside from between the rails on the ends of the cross-ties when he got to the point where they came so close together, he says: "I thought I was stepping on the outside of the rails on the cross-ties, but I found I was mistaken."

Coupled with such knowledge or means of knowledge on the part of the plaintiff, as is disclosed by this record, there is not a particle of evidence showing actual notice to the defendant of the defective condition of the block between the rails, where the plaintiff was injured, nor was there any evidence as to the length of time the blocks had been in a bad condition, so as to raise a presumption of notice of such defective condition from lapse of time.

From these circumstances standing forth on this record undisputed, the evidence of contributory negligence on the part of the plaintiff or what is tantamount thereto, of waiver, are such that but one legal conclusion can be drawn from them, and that conclusion is fatal to plaintiff's case.

Quite recently in this court the familiar principle has been announced that a servant assumes all risks incident to the business in which he engages and the duties he engages to perform. *Jackson v. Railroad*, 104 Mo. 448. But the principle there announced is of a more comprehensive character; for it embraces within its scope not only such risks as are incident, etc., but such risks as should become apparent to the employe by ordinary observation or are readily discernible by a person of his age and capacity in the exercise of ordinary care, or where his means of knowledge are equally as great as those of his employer, or if he discovers the unusual risks and makes no complaint. In such circumstances, even extraordinary risks may assume in legal effect the shape and proportions of only ordinary and incidental perils, adding nothing to the liability of the master and affording the servant no additional grounds for recovery in the event of injuries received. These positions it is scarcely necessary to say are sustained by an abundant array of authorities both in England and in this country. Shear & Redf. Neg. [4 Ed.] sec. 185; *Hayden v. Mfg. Co.*, 29 Conn. 548; *Gibson v. Railroad*, 63 N. Y. 449; Wood, Mas. & Ser. 758, *et seq.;* 2 Thompson, Neg. 1008; *Hewitt v. Railroad*, 31 Am. & Eng. R. R. Cases, 249; *Moulton v. Gage*, 138 Mass. 390; *Ladd v. Railroad*, 119 Mass. 412; *Lovejoy v. Railroad*, 125 Mass. 79; *Hulett v. Railroad*, 67 Mo. 639; *Smith v. Railroad*, 69 Mo. 32; *Kean v. Rolling Mills*, 66 Mich. 277; *McGinnis v. Bridge Co.*, 49 Mich. 466; *Hathaway v. Railroad*, 51 Mich. 253; *Railroad v. Gildersleeve*, 33 Mich. 133; *Davis v. Railroad*, 20 Mich. 105; *Railroad v. Love*, 10 Ind. 554; *Railroad v. McCormick*, 74 Ind. 440;

Whittaker, Smith, Neg. 131, 133; *Darracutts v. Railroad*, 31 Am. & Eng. R. R. Cases, 157; Beach, Contrib. Neg., secs. 138, 139; *Lockwood, Adm'r, v. Railroad*, 55 Wis. 50; *Hutchinson v. Railroad*, 5 Exch. 343; *Skipp v. Railroad*, 9 Exch. 221; *Assop v. Yates*, 2 Hur. & N. 768; *Williams v. Clough*, 3 Hur. & N. 768; *Gaffney v. Railroad*, 15 R. I. 456.

Judge THOMPSON, as cited above, states the dominant rule in this class of cases thus: "If the servant, before he enters the service, knows, or if he afterwards discovers, or if, by the exercise of ordinary observation or reasonable skill and diligence in his department of service, he may discover that the building, premises, machine, appliance or fellow-servant in connection with which or with whom he is to labor is unsafe or unfit in any particular, and if, notwithstanding such knowledge, or means of knowledge, he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discoverable, and to waive any claim for damages against the master in case it shall result in injury to him. 'Much of the work of the country is done without the employment of the best machinery or the most competent men, and it would be disastrous if those prosecuting it were held to insure the safety of all who enter their service. If persons are induced to engage, in ignorance of such neglect, and are injured in consequence, they should be entitled to compensation; but if advised of it they assume the risk. They contract with reference to things as they are known to be, and no contract is violated, and no wrong is done, if they suffer from a neglect whose risk they assume. *Volenti non fit injuria*.' It may be stated as a general proposition, that the master is under no higher duty to provide for the safety of the servant than the servant is to provide for his own safety. It follows, that if the knowledge or the ignorance of the

master and that of the servant in respect of the character of the machine are equal, so that both are either without fault or in equal fault, the servant cannot recover damages of the master. But this rule can only be predicated of cases where the servant and the master have equal means of knowledge; for though the servant and the master be equally ignorant, yet if the servant be ignorant without fault and the master be negligently ignorant, the servant will have a cause of action against the master."

In *Darracutts v. Railroad, supra,* after speaking of the duties of a railroad company towards its employe, LEWIS, P., proceeds to say: "There are also certain correlative duties on the part of the employe to the company. Of these, one is the duty of the employe to be reasonably observant of the machinery he operates, and to report any defects he may discover therein to the company. Another is to use ordinary care to avoid injuries to himself; for the company is under no greater obligation to care for his safety than he himself is. He must always obey the rules of the company prescribed for his safety, and which are brought to his knowledge. And he must inform himself, as far as he reasonably can, respecting the dangers as well as the duties incident to the service upon which he enters."

Tested by the authorities cited, and by the rules which they announce, the evidence preserved in this record shows that plaintiff's injuries are the result of his own imprudent negligence and such want of that measure of care of his own interests and personal safety as the law demands at his hands. For these reasons the judgment should be reversed.

Judges GANTT and MACFARLANE concur in all the paragraphs except paragraph 7. Judge THOMAS concurs only in those paragraphs relating to the block. Judges BLACK and BRACE dissent, and BARCLAY, J., expresses his views in a separate opinion.

The judgment is, therefore, reversed, and the cause remanded.

Alcorn v. The C. & A. Ry. Co.

SEPARATE OPINION.

BARCLAY, J.—The plaintiff claims generally that his injuries resulted from defendant's negligence in failing to provide a reasonably safe place in which to perform his duties.

It does not seem necessary to state the pleadings.

The tendency of the plaintiff's evidence is to show that he was at work in defendant's yard at Kansas City, Missouri, on the night of September 23, 1885. It became necessary for him to uncouple the rear car of a freight train moved by an engine, for the purpose of "shunting" or switching the car into its proper place, as directed by the defendant's representative on the ground. While engaged in an effort to do so, after several ineffectual attempts to draw the coupling-pin as he walked alongside the car, while the train was running slowly (about three miles an hour), plaintiff's foot was caught, and became fastened between the fixed rails of a switch (connecting the track on which the train was moving with another), in consequence of which he was thrown down, and the wheel of the car ran over his left arm, and crushed one of his feet.

In the railroad yard where the accident took place, the spaces near the junction of and between the fixed rails of switches were generally filled with large wooden blocks to prevent such accidents as that in question ; but, at the particular point where plaintiff was hurt, the block had been so worn away by use as to be practically worthless for that purpose. It was "slivered to pieces," and consisted only of some long, loose fragments, that could be lifted out with the fingers. Plaintiff was previously unaware of such defect.

His injury happened about half past seven P. M. when it was too dark to admit of his readily observing the actual condition of the block while endeavoring to uncouple the car. His employment required him to

move switches, to couple and uncouple cars and generally to assist in the making up of trains as directed by his superior.

His own account of his injury is as follows: "He set the switch and went in and set the pin, * * * and that he heard it fall back as he was going along; that he was walking on the outside of the rails; that the cars were on the two main rails; that the two rails came together, and he was on the outside of the rail the car was on; that he came down to this point and reset the pin and it fell again; that he set it again, or went to do it, and stepped on this bad block and got his foot caught between these two rails, and the cars came back and threw him down and ran over his arm; that the train was running about three miles an hour; that he had no trouble in pulling the pin; that it was so worn it would not set; that he had to pull it the second and third times; that when he set it, the first time it fell back; that he had to go for it again; that he wanted to get this car off and it fell again, and he stepped in between these rails where it was not properly blocked and got his foot caught; that he had not been in between the rails on which the car was running at all; that walking along on the outside of the rail and pulling the pin in the manner he described was the way he always pulled a pin; he thought it was the safest way; that he considered it safer to walk on the outside than to go in between the cars, or on the brakebeam either."

The foregoing is a sufficient outline of the substance of plaintiff's testimony for the purposes of this appeal.

Twice during the trial the court, against the objection of defendant, admitted evidence that, on the evening of the day following the accident, the block in question was found to have been replaced by a new one.

The first admission of such testimony occurred during the examination of the plaintiff's witness Lamoreaux in this manner, viz.: "Q. What was the

condition of that place you have described, where the plaintiff got hurt the next evening. (Objected to by defendant as incompetent, irrelevant and immaterial. Objection overruled. Defendant excepted.)

"*Q.* What was the condition of that place the next evening? (Objection overruled and exception as before.) *A.* There was a new block there.

"*Q.* What kind of a block was in there the next evening? (Objection and exception as before.) *A.* I do not know what kind of wood it was made of. I know it was a new block.

"*Q.* With reference to the appearance of the block, did it look like it would fill up the space between the rails? (Objection and exception as before.) *A.* Yes, sir.

"*Q.* Mr. Lamoreaux, state if it would be possible for the foot of a switchman, in walking along there uncoupling cars, to have been caught between the rails on said block if it had been in the condition you saw it when you came down there the next evening? (Objection and exception as before; but no objection was taken to the competency of the witness to express an opinion.) *A.* I do not think it would.

"*Q.* You do not think it would be possible? (Objection and exception as before.) *A.* No, sir."

Another instance of the admission of evidence on that subject was during the cross-examination of defendant's witness Kennedy, viz.: "*Q.* Now, what was the condition of this spot, where Alcorn got his foot caught, the next day, when you came to work in the evening? (Objected to by defendant as incompetent, irrelevant and immaterial. Objection overruled. Defendant excepted.) *A.* There was another block in there.

"*Q.* There was a new block put in there? (Same objection, ruling and exception as before.) *A.* Yes sir."

During the trial, defendant offered in evidence "rule 55," the terms of which have been already mentioned; but the court, upon objection, excluded it.

Defendant had previously given testimony tending to show that the rule had been in force on its line some five or six years before this accident; that it was printed with other rules on the back of time-tables distributed to employes; that a special copy was printed on a large placard and posted in all particularly public places along the road, in roundhouses, depots, etc.

The verdict was for plaintiff as has been stated, and defendant appealed.

I.   The first inquiry is whether or not the trial court erred in submitting the cause to the jury.   The defendant has insisted, throughout the hearings in this court, that it did err in refusing to give an instruction in the nature of a demurrer to the evidence.   It appears necessary now to enter into the merits of that point more fully than has been done heretofore.

The leading facts on which plaintiff relies have just been stated.   Their substance is presented as given by plaintiff's witnesses, and as favorably to him as the testimony permits.   It is familiar law that, in ruling upon such a point as that before us, the plaintiff is entitled to have his case so viewed, and to enjoy the benefit of every reasonable inference in his favor which the facts will bear.

His evidence, we think, fairly tends to establish that the absence of a block, or the worn condition of it, at the junction of the rails that caught his foot, was such a defect in the plant and appliances necessary to his work, as ordinary care on defendant's part would have discovered and rectified.   The master's duty to the servant requires of the former ordinary care to supply and maintain reasonably safe and sufficient appliances; among them, in this instance, a reasonably safe track on and about which plaintiff's work had to be done.

We consider that the evidence so plainly tends to show a want of such care, that we shall not pause to do more than thus state that conclusion.

But we then encounter the defendant's contention that, on the facts shown, plaintiff should be held to have voluntarily assumed the risks created by the condition of the tracks described. That contention rests, mainly, on plaintiff's admissions. He was generally familiar with that yard, and had had some years' experience in railroad work. He had been a switchman on the day force for several months, and, for six weeks prior to the accident, had been on duty as night switchman there. He knew the mode of blocking used by defendant, and that the blocks rapidly deteriorated in consequence of the destructive action of the flanges of carwheels upon them. He knew that the place of the accident was in almost constant use for switching cars, a sort of converging point of all the tracks in the yard. He frequently passed it in the line of his duty.

All these facts he admits, but he adds that he did not know, before his foot was injured, that there was a defective block at that place, or what the condition of the block was.

Considering his surroundings at the time of the accident, we do not think it can be justly declared ( as a conclusion of law) that he was aware of the defective condition of the block or of the danger it produced. Whether or not he is chargeable with a want of ordinary care, in having failed to discover its condition, we will discuss along with the question whether his conduct in the circumstances was negligent generally.

There is a clear and logical distinction between a defense resting upon the assumption of risks, and that, predicated upon contributory negligence. Even if a servant encounters, in the service, perils which are held unusual and extraordinary, he is, nevertheless, bound to use ordinary care to avoid injury thereby. Knowledge of a danger possessed by a given person, whose

conduct comes into question, forms a very important element to consider in ascertaining whether his action in its presence was careful, or the reverse, but it is not always conclusive of that issue. The complete facts of each case must be noted to determine what weight and significance such knowledge should have.

In the case at bar the work in which plaintiff was engaged required close attention and was highly dangerous in character. It was night, and plaintiff's only light was from a lantern which he carried. In uncoupling the car, he had to direct his eyes toward the coupling machinery, and, as he himself said, "he could not watch his hand and at the same time his feet; that a man has got to look what he is doing when he uncouples cars; that he supposes everything is all right on the track."

It must also be borne in mind that the care of the roadbed devolved on an entirely different force or department from that with which the plaintiff was acting. There were some fifteen or twenty different blocking points in the yard. The repeated renewals of worn or broken blocks, especially at such a spot as that where he was hurt, would make changes in the condition of the blocking frequent, so that a switchman could not safely rely on his last observation of that condition. He was necessarily bound to act, in a great measure, on the assumption that the track was in a reasonably safe condition for use. In the absence of knowledge to the contrary, he had a right to suppose that the duty of maintaining the track in that condition had been performed.

The head switchman, with whom plaintiff was working, and who was yet in defendant's employ at the time of the trial, testified that he (witness) "had worked in the yards, prior to the time plaintiff got injured, about a year; that he had not noticed that there was a defective block in this place before." This corroborates plaintiff, and shows how naturally these men,

whose dangerous duties were performed by night, could overlook a close observance of the track about which their work went on. Plaintiff accounts for that in this wise : "That the tracks and blocks and guardrails and blocking in that locality are hidden away after the cars are running over them," as well as by the circumstances of darkness, and the close attention required to be given to the coupling apparatus of the cars. Compare *Hendricken v. Meadows*, 28 N. E. Rep. (Mass.) 1054.

Taking plaintiff's evidence in its entirety, we think it cannot properly be declared as a matter of law that he was negligent in any respect. The trial court did not err in refusing to sustain the demurrer to the evidence.

All the members of the court, except Chief Justice SHERWOOD, concur in the foregoing, but what follows is an expression of individual views.

II. The next question relates to the correctness of the court's ruling admitting, over defendant's objection and exception, testimony for plaintiff to the effect that, within twenty-four hours after the accident, the block (to whose defective condition the injury is ascribed) between the fixed rails of the switch was replaced by a new and perfect one.

Whether evidence of subsequent acts of a defendant (in relation to the subject-matter of a charge of negligence) is admissible in any given case must depend largely on circumstances. Such testimony is relevant when it amounts to an admission of the negligence alleged or otherwise tends to prove any actual issue in the cause. But the mere fact that the condition of the plant or appliances (about the spot where such an accident has happened) is thereafter improved by the owner does not, of itself, justify an inference that the previous condition was negligent or defective.

It is but natural and in accordance with the promptings of humanity to take steps toward avoiding

a recurrence of such mishaps as this case presents. Steps so taken may furnish greater safeguards against danger than the legal duties of the owner of the property require, and should not be regarded as establishing the standard of care by which his liability (for the previously existing condition) is measured.

There are precedents in which evidence of subsequent acts, as well as of declarations of a party in interest, has been given and approved, as bearing legitimately on some of the issues involved; for example, *Readman v. Conway* (1879), 126 Mass. 374, and *Hoyt v. Railroad* (1890), 118 N. Y. 399; but no satisfactory reasons have been presented to justify the admission of such testimony here. It has been suggested that that ruling of the trial court may be sustained on the ground that it was proper to show, by inferences from experiments with the new block, that blocking was generally beneficial and conduced to the safety of the workmen. The manner in which that sort of testimony first appeared at the trial, during the examination of witness Lamoreaux, gives some apparent support to that suggestion of its purpose; but there is no such peculiarity about its admission at a later stage, during the cross-examination of Kennedy. There its drift is unmistakable. It was evidently offered to establish an implied admission by defendant of its negligence toward plaintiff, as alleged by him.

There was no dispute over the condition of the block. The real issue concerning it was whether or not blocking rendered the track safer to those required to work about it. The defendant offered evidence which tended to show that the risks of switchmen were not lessened by blocking; that, with the blocks (generally used and there in use) in position, a man was quite as likely to stumble, on striking the end of the wood, as he was to catch his foot in the joint without a block.

The substantial question between the parties was whether or not there was any want of care in leaving

the switch unblocked, or, in other words, whether or not defendant was negligent in permitting it to remain so.

The question whether blocking was conducive to greater safety of the men was, in substance, nothing other than the question whether defendant was negligent in leaving the switch unblocked. To endeavor to prove the affirmative of it by experiments with a new block, introduced at the place of the accident on the following day, was tantamount to using the improvement as a confession of the need thereof, and that the previous want of it was negligence on defendant's part. As such it seems to me that it should have been excluded, for the reasons indicated herein, as well as in many other recent opinions on this topic. *Shinners v. Proprietors* ( 1891 ), 28 N. E. Rep. ( Mass.) 10 ; *Railroad v. Jones* ( 1890 ), 14 S. W. Rep. ( Tex.) 309 ; *Getty v. Town of Hamlin* ( 1891 ), 27 N. E. Rep. ( N. Y.) 399 ; *Hodges v. Percival* ( 1891 ), 132 Ill. 53 ; *Board v. Pearson*, 28 N. E. Rep. ( Ind.) 1120, and the cases cited to this point at the first hearing of this case, 14 S. W. Rep. 944.

As the evidence mentioned was erroneously received the judgment should be reversed, unless the substantial rights of defendant upon the merits were not prejudiced thereby.

If the error was harmless, the judgment should be affirmed notwithstanding it. But, in my opinion, the natural tendency of such evidence is to suggest to the jury a different criterion by which to estimate the proper degree of care ( required of defendant) than that fixed by the rules of law. Its effect is to contrast defendant's prior conduct with its after action in the light of the experience which the accident itself affords. Such comparison could not be harmless to defendant in the present case. The better the precautions which it had taken to avert a second calamity the more injurious to its interests would be the admission of such evidence. For this error a new trial must be had, it seems to me.

Alcorn v. The C. & A. Ry. Co.

III. Defendant complains also of the refusal of the trial court to admit in evidence "rule 55;" but, as the judgment is to be reversed for a different reason, it is not necessary to go further into that subject now, than to say that although the facts offered by defendant tended to show that plaintiff was chargeable with knowledge of the existence of the rule, yet, in view of all the evidence, and especially of the testimony on defendant's part mentioned in the opinion of BLACK, J., in this cause in division number 1 (*Alcorn v. Chicago, etc., Co.* (1891), 16 S. W. Rep. 232), the error (if any there was) in excluding it was not, in my opinion, prejudicial to the substantial rights of the defendant upon the merits, and, consequently, constitutes no ground for a reversal. R. S. 1889, sec. 2100.

For the reasons indicated in the second paragraph of this opinion the judgment should be reversed and the cause remanded for a new trial.

THOMAS, J., desires to be recorded as concurring on all points in the foregoing opinion.

BRACE, J.—After a careful reconsideration of the whole record in this case, I am constrained to dissent from the opinion of the majority of the court, for the reason that, while *strictissime jure*, it may be said the court erred in refusing to permit the rules of the company to be read in evidence, and in overruling the objections to the evidence in regard to the new block put in after the accident, yet the evidence discloses a meritorious cause of action in the plaintiff for damages for the injuries he received, and I cannot see that these errors in this case could have injuriously affected the defense on the merits, and under section 3775, Revised Statutes, 1879, the judgment ought not to be reversed; BLACK, J., is of the same opinion.