# ELIZA BROCKSCHMIDT v. ST. LOUIS & MERA-MEC RIVER RAILROAD COMPANY, Appellant.

### Division Two, July 1, 1907.

1. **NEGLIGENCE: Contributory: Assuming Position of Danger: Demurrer.** One who was familiar with the frequent movement of cars upon a public street, and the loud noise they made in approaching, and was a part of a gang who for three weeks had been working in the same vicinity and knew the men were in the habit of working on the track until a car got very close and then suddenly stepped out of the way, who deliberately assumed a position of danger on the track by turning his back towards the direction from which the cars uniformly approached and there engaged for five or six minutes in removing dirt which had fallen from his master's wagons, without looking or listening, was guilty of contributory negligence; and if struck by a car moving at an ordinary speed and killed, there being no wantonness or recklessness on the part of the motorman, his widow cannot recover for his death, whether the bell was being rung or not. And a demurrer to the evidence, if offered, should be sustained.

2. ————: ————: ————: **Vigilant Watch Ordinance.** And that must be the ruling although the petition alleges as a ground of recovery a violation of the Vigilant Watch Ordinance which required motormen to keep a vigilant watch for persons on the track and on the first appearance of danger to them to stop the cars in the shortest time and space possible.

Appeal from St. Charles Circuit Court.—*Hon. H. W. Johnson*, Judge.

REVERSED.

*T. M. Pierce, S. P. McChesney* and *Boyle & Priest* for appellant.

The court erred in refusing to take the case away from the jury at the close of the plaintiff's case and at the conclusion of all the evidence, because the proof showed conclusively that the deceased was guilty of

such gross contributory negligence as to bar a recovery. Davies v. Railroad, 159 Mo. 6; Evans v. Railroad, 178 Mo. 512; Tanner v. Railroad, 161 Mo. 497; Engleking v. Railroad, 187 Mo. 158; Wheat v. St. Louis, 174, 579; Clancy v. Railroad, 192 Mo. 652; Ries v. Railroad, 179 Mo. 1; Deane v. Railroad, 192 Mo. 575; Giardina v. Railroad, 185 Mo. 330.

*A. R. Taylor* for respondent.

Appellant contends that a demurrer to the evidence ought to have been sustained, because the deceased was guilty of negligence in working on the track in a position where he couldn't see the approach of a car that struck him. This proposition is a renewal of the challenge to the doctrine that, although a person is guilty of negligence in being upon a track and failing to watch and look for the car, yet if the operatives of the car saw, or by exercise of ordinary care would have seen, the person so on the track and in peril and thereafter by the exercise of ordinary care could have averted the injury, the company is still liable, notwithstanding the negligence of such party. This question, long contested, it was supposed by many, was finally settled against appellant's contention, but it appears that it will reappear whenever a case is presented to an appellate court. It might be conceded that deceased, Herman Brockschmidt, was negligent in not keeping a look-out for the car. His negligence was of the most pardonable quality. He was on a public street, where he had a lawful right to be. He was not a trespasser. He was engaged in a beneficent work for the benefit and welfare of the appellant, towit, removing what might be a dangerous obstruction to appellant's car and a menace to its passengers. He is absorbed in his work. He had a right to expect at least some notice of an approaching car and that he would not be run down whilst so at work, without warn-

ing. Hence, we do not think that the failure of deceased to keep a sharp look-out for the car can be called gross negligence, as appellant asserts in its brief; but conceding, as said, that he was to a degree negligent in failing to keep a constant watch behind him whilst at work, is it the law that such negligence defeats the right of recovery where, as the plaintiff's evidence shows, he was in plain view of the motorman of the car whilst he runs down his car upon him without warning, except a halloo when the car was within eight or ten feet and too late to stop the car and allow him to escape? We submit that such is not the law of this State. Engleking v. Railroad, 187 Mo. 165; Seaboard Coasting Co. v. Tolson, 139 U. S. 558; Kelly v. Railroad, 75 Mo. 140; Werner v. Railroad, 81 Mo. 374; Bergman v. Railroad, 88 Mo. 678; Dunkman v. Railroad, 95 Mo. 244; Kellny v. Railroad, 101 Mo. 67.

FOX, P. J.—This cause is now pending before this court upon appeal by the defendant from a judgment rendered in the circuit court of St. Charles county, Missouri. This suit was originally instituted in the circuit court of St. Louis on the eleventh day of September, 1902. The cause was removed upon the application of the plaintiff to St. Charles county, where it was finally tried at the February term of said court.

This is an action in which the plaintiff is seeking to recover of the defendant five thousand dollars as a statutory penalty for the wrongful killing of her husband. The plaintiff's petition states, in substance, that she was the lawful wife of Herman Brockschmidt at the time of his death; that the defendant is a corporation under the laws of the State of Missouri, and used and operated a street railway in the city of St. Louis, over and along Manchester avenue, and at and near its intersection with Mitchell avenue, both public streets; that on the thirteenth day of August, 1902,

the plaintiff's said husband was on Manchester avenue, at or near the intersection of Mitchell avenue in the city of St. Louis, engaged in removing dirt, which had fallen upon said street, when the defendant's motorman and conductor in charge of its east-bound car on Manchester avenue carelessly and negligently and without using any care to control or stop the said car to prevent its striking the said Brockschmidt, and without keeping any watch or lookout to see the persons on said street, and without giving any warning by bell or otherwise to the said Brockschmidt of the approach of said car, and whilst running the said car at a high and negligent speed, caused and suffered said car to strike and injure said Brockschmidt, so that he died from said injuries on said day. The plaintiff then pleaded an ordinance of the city of St. Louis, which provided that motormen and conductors of street cars should keep a vigilant watch for persons on foot, either upon street railway tracks or moving toward them, and upon the first appearance of danger to such persons the car should be stopped within the shortest time and space possible, and that at the time and before the injuries to her husband the aforesaid motorman and conductor in charge of said car failed to keep such vigilant watch and failed to stop said car within the shortest time and space possible, which violation of said ordinance directly contributed to cause the injury and death of the plaintiff's husband. The prayer of the petition was for five thousand dollars and the statutory penalty for the killing of the said Brockschmidt.

The defendant's answer was a general denial, and a further plea that whatever injuries were sustained by the said Brockschmidt were caused by his own contributory negligence, in that, while an east-bound car of defendant was approaching, he carelessly and negligently stepped near and upon the east-bound track

of defendant, immediately in front of said car, without first looking and listening to ascertain whether a car was approaching in an easterly direction, and that said negligence on the part of plaintiff's husband directly contributed to cause whatever injuries, if any, were sustained by him on said occasion.

The reply was a general traverse of the averments in the answer.

The testimony developed at the trial tended to show about this state of facts concerning the killing of plaintiff's husband by the defendant's car: At the time of the death of plaintiff's husband, Herman Brockschmidt, the defendant, St. Louis & Meramec River railroad Company, was maintaining a double-track electric railway system on the south side of Manchester avenue in the city of St. Louis. Manchester avenue runs east and west, cars moving west on the north and east on the south track. Just south of Manchester avenue is the right of way and tracks of the Missouri Pacific Railway Company. Streets run into Manchester on the north but not through. On the thirteenth day of August, 1902, at about six o'clock in the afternoon, the plaintiff's husband was acting as foreman of a gang of men engaged in excavating along the right of way of the Missouri Pacific Railway Company, and south of defendant's tracks over which wagons were continuously hauling dirt. It was a bright, clear afternoon. In passing over the rails of the defendant's tracks, dirt would naturally fall off the wagons and would accumulate on the rails. This work of hauling dirt across the defendant's tracks had been going on for about three weeks before the injury. According to the testimony of the witnesses on the part of the plaintiff, as an east-bound car approached, the deceased was engaged in shoveling dirt off of the south rail of the defendant's east-bound track, with his back toward the west, facing the east, and standing

astride the south rail. He had been in that position from two to five minutes before he was struck by the defendant's car. The testimony tended to show that the noise and rumbling of the car as it approached could be heard for some distance away, and some of the witnesses who were present testified that they heard the noise and rumbling of the car as it approached. The plaintiff testified that she was the wife of Herman Brockschmidt, deceased, and that Manchester avenue had been an open public street in the city of St. Louis for more than twenty years, and that she had known it that long; that her husband at the time of his death on the thirteenth of August, 1902, was a very healthy man, had never been sick and his sight and hearing was as good as a young man of twenty years; that her husband was injured about six o'clock and that he died at the hospital about two hours later; that her husband was a contractor engaged in the business of taking contracts for grading and city work and for doing work connected with putting in streets and had lived on Manchester avenue twenty years and was living there when the tracks were first put down. That their residence was about a block from Manchester avenue and that the noise of the cars running on the tracks could be heard from their residence, and that standing on the front porch of their residence she had frequently heard the noise and rumbling of the cars on Manchester avenue. There is no dispute in the testimony that the deceased, had he looked, could have seen the car coming, for other witnesses who were present did see it, and on the other hand that the motorman could see the deceased on the track. The evidence further tended to show that the deceased was familiar with the operation of the cars and it further appears that cars ran along there on Manchester avenue every five or ten minutes, and sometimes at longer intervals. The evidence on the part of the plaintiff

further tended to show that the car was running at an ordinary speed of from five to eight miles an hour, and that the deceased stood with his back toward the west and his face toward the east whilst at the work of shoveling dirt off of the track, with his left foot inside or between the rails of the south or east-bound track and his right foot outside or south of the south rail. Some of the witnesses for the plaintiff testify that when the car was within eight or ten feet of the deceased the motorman hallooed or gave him a warning to get out of the way. Witness John Schultz for the plaintiff said that this exclamation of warning was in a loud tone of voice; that he heard it one hundred and fifty feet away. This same witness testified that deceased in shoveling this dirt was not doing anything unusual; that he had seen him doing the same thing every day. He further testified that the men in doing this work did not ordinarily stop their work until the car got very close to them. One of the witnesses for the plaintiff, Charles Becker, testified that he saw the car strike the deceased, which resulted in his death, and that he observed the car about ten or fifteen feet before it reached the deceased, and he saw the motorman applying the brakes with both hands. Upon cross-examination he said he did not know whether the motorman had been applying the brakes prior to the time he observed him or not. The witnesses for the plaintiff testified that they did not hear any gong or bell ring, however, with the exception of one of them they say that they would not testify that a bell or gong was not sounded, but simply state that they did not hear it. One of the witnesses for the plaintiff, Frank Harrison, testified that the motorman did not give any signal by bell or otherwise; but that he heard him give the verbal warning "to get out of there."

The evidence on the part of the defendant tended to show that as the car approached the place where the

defendant was struck, opposite the intersection of Mitchell avenue with Manchester avenue, the motorman rang the bell when seventy-five or one hundred feet away and that when the car was only eight or ten feet away from the deceased he suddenly stepped upon the track and was run over and killed, and that the motorman did all in his power with the appliances in his hand to stop the car as soon as the danger to the deceased was discovered. Some of the witnesses for the defendant as well as the plaintiff heard the motorman call out to the deceased in a loud tone of voice "to get out of the way," but the deceased remained with his back turned toward the car and his face turned eastward until he was struck by the car and killed.

At the close of the plaintiff's evidence as well as at the close of all the evidence the defendant requested an instruction in the nature of a demurrer to the evidence that the plaintiff was not entitled to recover. This request was denied and to the action of the court in refusing such request an exception was duly preserved. The court then gave its instructions to the jury and the cause was submitted and they returned a verdict finding the issues for the plaintiff and assessing her damages at the sum of five thousand dollars. A timely motion for a new trial was filed and by the court overruled. Judgment was rendered in accordance with the verdict and from this judgment the defendant in due time and proper form prosecuted its appeal to this court, and the record is now before us for consideration.

## OPINION.

The record in this cause discloses that at the close of the evidence on the part of the plaintiff an instruction in the nature of a demurrer to the evidence was requested by the defendant, declaring to the jury that

plaintiff was not entitled to recover. This request was again renewed at the close of all of the evidence. We have carefully analyzed in detail all of the evidence disclosed by the record in this cause and in our opinion there is no escape from the conclusion that the demurrer to the evidence should have been sustained, and it was manifest error on the part of the court to refuse it. The material testimony developed upon the trial of this cause is brief, and while it may be said there may be some conflict in the testimony as to the sounding of a gong or the ringing of a bell, considering the testimony alone as offered on the part of the plaintiff there can be but one conclusion as to the position assumed by the deceased upon the track of the defendant at the time he was stricken by defendant's car. The testimony clearly shows that the deceased was familiar with the tracks, and that he knew that cars were passing on these tracks every few minutes; he had been at work about the place where this injury occurred for something near three weeks. A part of the work consisted in removing dirt which had fallen off the wagons in crossing the track and would accumulate on the rails. One of the witnesses for the plaintiff said it was nothing unusual to see the deceased removing this dirt from defendant's track, for he had seen him doing that character of work nearly every day. Other persons of the gang of workmen under deceased's control did work of a similar character, and one of the witnesses testifies that it was very common for them in removing the dirt to remain on the track until the cars in passing would get very close to them. There is no dispute in the testimony as to the view being unobstructed, and that persons giving any attention to the approach of a car could see it. Neither is there any dispute as to the testimony showing that the cars in approaching would make a rumbling noise and could be heard for some distance, and that the atten-

tion of those who were listening would be attracted by such noise.

On the afternoon of August 13, 1902, about six o'clock, plaintiff's husband proceeded to remove some dirt off of the south rail of the east-bound track, and as before stated, he was familiar with these tracks and knew that the cars upon the track from which he was removing the dirt were coming from the west and going east. Notwithstanding this knowledge he took a position to do this work with his back turned toward the west and his face toward the east, and while in that position he was struck by one of defendant's cars coming from the west and going east. There is no pretense that the motorman was running this car in a reckless manner, and it is not contended on the part of the respondent that there was any wilful or wanton negligence on the part of the motorman. The car was being run at an ordinary speed of from five to eight miles an hour. It is apparent that had the deceased had his face turned toward the west and giving any attention to the approach of the car, this accident would not have occurred. It is equally apparent, even in the position that he assumed, that had he not become so engrossed in his work as to give no attention to the fact that cars were being run upon that track, coming from the west, the accident would not have occurred, and in our opinion, the assuming of a position in which he was unable to see the approach of the car, when he knew that cars were passing over that track every few minutes, and giving no attention whatever, so far as the testimony discloses, to its approach, neither looking nor listening for its approach, was such negligence as directly contributed to the accident, and is a bar to any recovery for his death under those circumstances.

Taking the strongest possible view of the testimony in this case in favor of the plaintiff, and conceding for the purposes of this case that the motorman did

not sound the gong or ring the bell, if we are to follow the rules as announced by the very recent well-considered cases upon this subject, there can clearly be no recovery in this proceeding.

In Davies v. Railroad, 159 Mo. 1, the facts were strikingly similar to those in the case at bar. In that case at the time of the accident the plaintiff was standing with his back to the approaching car and prying up the end of a beam while his assistants were fastening the hoisting apparatus around it. He did not see or hear the car; the parties in charge of it failed to check its speed or ring a bell or give any warning whatever of its approach. The conclusions reached in that case and concurred in by all of the judges in Division No. 1 were thus expressed: "Certainly it must go by the saying, that the voluntary assuming of a position upon or so near to the tracks of a street railway, over which cars are run every few minutes, that they can not pass without inflicting an injury to the party so positioned, unless the intervention of some independent agency occurs to prevent it, is an act in itself of the grossest negligence. If in taking the position assumed by plaintiff, and at the same time engaging in an undertaking, as he says he was, that prevented his seeing or hearing the approach of the cars upon defendant's road, that he knew were due and liable to pass along at any moment, does not constitute an act of negligence that must be said to have contributed to the injury resulting to him, on account of being run against by one of defendant's cars pursuing its usual course upon the tracks, it would be idle to search the field of practical experience for an illustration of what is termed in law an act of contributory negligence. The plaintiff had no right to assume a place of danger upon defendant's tracks and deliberately engage in an undertaking in such a manner as to deprive himself of the benefit of the sense of sight and hearing, the common avenues

through which the approach of danger is communicated, and trust that defendant's agents in the course of their employment would be more considerate and watchful for his safety than he himself." The rule announced in this case is cited with approval in Evans v. Railroad, 178 Mo. l. c. 512, and Clancy v. Railroad, 192 Mo. 615; and a similar rule is clearly announced in the cases of Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Engleking v. Railroad, 187 Mo. 158, and Wheat v. St. Louis, 179 Mo. 572.

In Clancy v. Railroad, supra, while it is true that the majority of the judges of that division did not concur in the views as expressed in the discussion of the last chance and the humanitarian doctrine, yet there was a concurrence by a majority of the court upon the announcement of the conclusions reached in that case upon the facts, which were thus expressed: "The plaintiff had no right to rely upon the motorman to sound the gong. It may be considered negligence for the motorman not to do so, but it was clearly negligence for the plaintiff to place himself in such a position that he could not see the approaching car, and to take no precautions whatever looking to his own safety. Such conduct on his part was clearly contributory negligence and bars his recovery, even conceding that the defendant was guilty of negligence."

In Giardina v. Railroad, 185 Mo. l. c. 334, plaintiff was denied a recovery in that case and this court held that the trial court did right to direct a verdict for the defendant on the evidence of the plaintiff. VALLIANT, J., speaking for the court in that case, thus announced the rule that: "It may be conceded that the defendant was negligent in running its car at a high rate of speed and without sounding the gong past a standing car from the rear of which the motorman ought to have known that people were liable to pass. It is not likely that the peremptory instruction was given on the the-

ory that no negligence of the defendant was shown, but rather, that the plaintiff failed to observe that degree of care that was to be expected of a man of ordinary prudence, and that his negligence contributed with the negligence of the defendant to produce the injury complained of."

In Clancy v. Railroad, supra, it was said by this court: "Conceding, then, that the defendant was guilty of negligence in the running of the car, and in not sounding the gong, and that all the other witnesses in the case, both for the plaintiff and the defendant, were mistaken in saying that the noise made by the running of the car could have been heard by any one listening for it, still, the plaintiff himself was guilty of negligence which bars his recovery. A similar contention was decided adversely to the plaintiff in Wheat v. St. Louis, 179 Mo. l. c. 580, and it was there said: 'The contention of the plaintiff that he had a right to have his mind so engrossed in his business that he did not think of the obstruction or thought he had passed it, is wholly untenable. Persons traveling on a highway are charged with the duty to exercise reasonable care to observe and avoid obstructions and defects. They have no right to be so engrossed in their own affairs as to be negligent of their own safety.' The principle underlying that decision is equally applicable to this case. There is, likewise, no difference in principle between the case at bar and the cases of Davies v. Railroad, 159 Mo. 1, and Evans v. Railroad, 178 Mo. l. c. 517."

In Evans v. Railroad, supra, this court, speaking through Judge BURGESS, quoted approvingly Davies v. Railroad, supra, and commented upon the fact that it was held in that case that the court should have declared, as a matter of law, that, upon plaintiff's own showing, he could not recover, and it was error to submit the case to the jury, and then added: "But plaintiff claims that even if the deceased was guilty of neg-

ligence, yet if defendant's employes in charge of the train became aware of his peril, or might, by the exercise of ordinary care, have become aware of it, in time to have enabled them by the exercise of ordinary care to have averted the injury, and they failed to exercise such care, plaintiff was entitled to recover. It will not do to apply this rule in all of its strictness to section men, whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look to their own personal safety, and to know of the times at which trains pass, to look for them and see them, and to move out of the way. It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by, and to require trains to stop upon all such occasions, when section men are discovered at work on the track, would not only be imposing upon railroads unjust burdens, but would greatly interfere with traffic and travel. Those in charge of trains have a right to presume in the first place that such persons will keep out of danger, and not until they have good reason to believe they will not do so, and then fail to use all proper means at their command to prevent injuring them, in consequence of which they are injured, or are injured by reason of the willful negligence of those in charge of the train, should the defendant be held liable, and there was nothing of that kind in this case. Our conclusion is that the demurrer to the evidence interposed by the defendant should have been sustained.''

What is said in the case just cited is equally applicable to the case at bar. In view of the fact that the deceased had been engaged at this work for about three weeks, and according to the testimony, that those engaged in removing the dirt from the track were in the habit of waiting until the car approached very near them before stepping to one side,—under this state of

facts the motorman had every reason to believe (it only requiring a moment to step to one side) that the deceased knew the car was approaching and would in due time step to one side and allow the car to pass.

We deem it unnecessary to pursue this subject further. That the testimony as disclosed by the record in this cause shows conclusively that the negligence of the deceased contributed directly to the injury received by him which resulted in his death, is too plain for further discussion. In the first place, he knew that cars were passing every few minutes upon the track where he was at work; he knew the direction from which those cars came. Notwithstanding his knowledge of these facts he carelessly and negligently assumed a position in doing the work which would prevent him from seeing the approach of defendant's car, and there is an entire absence of any evidence, notwithstanding his full information as to the operation of the cars, tending to show any precaution whatever or that he looked or listened, as it was his duty to do, for the approach of the cars being run and operated by the defendant; and we repeat, there can be no escape from the conclusion that the instruction in the nature of a demurrer to the evidence should have been given to the jury directing them to return a verdict for the defendant.

We have indicated our views upon the leading proposition in this cause, which makes it unnecessary to discuss the remaining complaints of appellant. Our conclusion is that the judgment of the trial court should be reversed, and it is so ordered.

All concur.