CHRIS NIVERT, Appellant, v. WABASH RAILROAD COMPANY.

Division One, February 28, 1911.

1. **NONSUIT: Involuntary: Upon Objection to Any Evidence.** Where, upon the jury being sworn, and the pleadings read, and the placing upon the stand of a witness by plaintiff, defendant objects to the introduction of any evidence, for the reason that the petition does not state facts sufficient to constitute a cause of action, and that objection is sustained, a nonsuit taken by plaintiff with leave to move to set the same aside, is not voluntary, but involuntary, and an appeal lies.

2. **PLEADING: Common Law Negligence and Humanitarian Doctrine: In Same Count.** *Held,* by WOODSON, P. J., that an action bottomed on common law negligence and one bottomed on the humanitarian doctrine, are inconsistent and repugnant and cannot be stated in the same count of the petition, and probably not in the same petition, since the humanitarian doctrine is based on the necessary concession that the plaintiff was at the time of the injury guilty of contributory negligence,

but, notwithstanding such negligence, the defendant, by the exercise of ordinary care, could have prevented the injury, but failed to do so.

*Held*, by LAMM, J., that the humanitarian doctrine runs on the theory that the plaintiff was negligent, but avoids the effect of that negligence by showing conditions which bring his case within the humanity rule; but a case under the humanitarian doctrine and one for common law or statutory negligence are not so inconsistent that both cannot be stated in the same count.

3. ————: Negligence: Humanitarian Rule. A petition alleging that plaintiff, at the time of his injury, was not negligent, but was "exercising due care and caution" on his part, fails to state a cause of action under the humanitarian rule. Likewise, where it charges that plaintiff was in a perilous position, and was seen by defendant's trainmen, "or by the exercise of ordinary care on their part would have been seen by them for the distance of more than one-half mile," but fails to state plaintiff was at a place where the defendant should have anticipated him, it fails to state a cause of action under the humanitarian doctrine.

4. ————: ————: ————: Rule to Be On Lookout: Not Pleaded. A failure to plead that plaintiff was at a place where defendant should have anticipated him cannot be avoided by assuming that defendant perchance had a rule or custom requiring its trainmen to be on the lookout for trackmen engaged in repairing the track on trestles, where such rule or custom is not pleaded; for such a rule or custom, if relied upon as a basis of recovery, like other material fact, should be pleaded.

5. ————: Negligence: Seeing Peril of Trackman. In the absence of any rule or custom to the contrary, trainmen owe no duty to look out for the safety of trackmen and section hands at work on trestles; and in the absence of any allegation of a rule or custom making it obligatory upon defendant's servants in charge of its train to look out for a switch hand at work in the necessary repair of the track on a long trestle, a petition which charges that defendant's trainmen saw or by the exercise of ordinary care could have seen the switchman's perilous position on the track on the long narrow trestle, but negligently failed to exercise such care, and in consequence injured him, does not state a cause of action.

6. ————: ————: Voluntary Peril. A petition which shows upon its face that the plaintiff switchman voluntarily assumed a perilous position on the trestle, and relied upon the defendant's trainmen to discover his peril, and to avoid injuring him, does not state a cause of action.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*Fred Lamb* and *Gilbert Lamb* for appellant.

(1)  No objection was made to the pleadings at a reasonable hour, defendant filed answer to the petition of plaintiff, the witnesses were present and all the expense made and labor incident to a trial performed before any objection was made to the pleadings. This practice has been repeatedly condemned by this court as well as by the courts of appeals.  Goldsmith v. Candy Co., 85 Mo. App. 595; Haseltine v. Smith, 154 Mo. 404; Nainn v. Railroad, 126 Mo. App. 707; Smith v. Railroad, 129 Mo. App. 413.  Measured by this standard the petition in this case is all the law requires.  Granted that it is not a marvel of good pleading and possibly defective in some respects, yet it cannot be said that it would not be good after judgment.  (2)  The petition contains all the essential averments to an action for general negligence as well as the necessary averments for a recovery under the humanitarian doctrine.  The petition in the case at bar is very like the petition in the case of Degonia v. Railroad, 224 Mo. 568.  In that case this court held that the petition was broad enough to allow a recovery for general negligence, and under the humanitarian doctrine.  We believe the same is true of the case on trial.  While the ruling of the trial court does not indicate the view of the court on the case, we think opposing counsel will agree that the view of the trial court was, that as the petition shows the tracks of defendant at point of injury were unobstructed and the plaintiff could see the train as far as the trainmen could see him then it became the duty of plaintiff to see the train and remove to a place of safety; that

section men are accustomed to work on tracks until the
trains are upon them before they move out of harm's
way, and trainmen owe them no duty to warn them
of the approach of trains.   This theory is well enough
under ordinary conditions.   We concede that the train-
men do not owe section men the duty to warn them
when upon the track at a point where it is only a step
to a place of safety.   We understand this to be the law
as declared in Degonia v. Railroad, supra; Cahill v.
Railroad, 205 Mo. 411; Evans v. Railroad, 178 Mo. 508;
Brockschmidt v. Railroad, 205 Mo. 444; and Clancy v.
Railroad, 192 Mo. 615.   Yet in each of these cases the
point of injury and the conditions were such that the
trainmen might reasonably expect that the injured
party could and would step to one side and avert a
collision.   The trial court in the case at bar over-
looked the well defined exception to the rule laid down
in the above cases, those cases in which the injured
party is in a place of imminent peril and without the
means or ability to reach a place of safety in a short
time.   Under such conditions it is the duty of the com-
pany to warn one so in peril and avoid his injury.   In
the case of Degonia v. Railroad, supra, this exception
to the general rule is recognized and in the recent case
of Williamson v. Railroad.   The petition in the case at
bar charges that the plaintiff was engaged in tighten-
ing a loose joint in the middle of a 72-foot trestle; that
the trestle was twelve feet in width and fifteen feet in
length; that in this position he was actually seen by
the engineer of defendant's train when he was yet half
a mile away; that the engineer continued to see plain-
tiff as he approached said trestle until plaintiff was
struck and knocked from the trestle, and that at no
time did the engineer warn the plaintiff of the pres-
ence of the train.   We submit that the petition brings
plaintiff's case clearly within the exception to the gen-
eral rule as applied to track repairers and states every

essential fact to a recovery under the humanitarian doctrine.

*J. L. Minnis* and *Robertson & Robertson* for respondent.

(1) The judgment entered does not show an involuntary nonsuit. The correct entry is "and now this trial having been begun, the plaintiff takes a nonsuit with leave to move to set aside said nonsuit." On the record made by the appellant his nonsuit was voluntary and therefore will not support an appeal. Williams v. Finks, 156 Mo. 597. (2) The statement of counsel made in open court in the course of the trial is proper matter for consideration by the court in passing upon the merits of plaintiff's case, and if that statement disclosed no cause of action, then the court was justified in sustaining the defendant's objection. Pratt v. Conway, 148 Mo. 291; O'Keefe v. Railroad, 124 Mo. App. 613; Oscanyon v. Arms Company, 103 U. S. 261. (3) Plaintiff's petition failed to state a cause of action. Ring v. Railroad, 112 Mo. 230; Evans v. Railroad, 178 Mo. 517; Cahill v. Railroad, 205 Mo. 393; Brockschmidt v. Railroad, 205 Mo. 435; Clancy v. Railroad, 192 Mo. 615; Sissel v. Railroad, 214 Mo. 515; Sharp v. Railroad, 161 Mo. 214; Kinlen v. Railroad, 216 Mo. 145; Sims v. Railroad, 116 Mo. App. 572; Ross v. Railroad, 113 Mo. App. 600; Degonia v. Railroad, 224 Mo. 564; Davies v. Railroad, 159 Mo. 1; Moore v. Railroad, 176 Mo. 544; Van Dyke v. Railroad, 230 Mo. 259.

WOODSON, P. J.—The plaintiff instituted this suit in the circuit court of Chariton county against the defendant to recover the sum of $20,000 damages for personal injuries sustained by him in consequence of the alleged negligence of the defendant; and a change of venue was taken to the circuit court of Saline county.

The amended petition filed in the cause (formal parts omitted) was as follows:

"Plaintiff states that the defendant is and was at all the dates set forth in this petition a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, with capacity to sue and be sued, and at all of said dates owned and operated a line of railway running west from the city of Salisbury in Chariton county, Missouri, with its engines and cars thereon.

"Plaintiff further states that on the 21st day of November, 1906, he was, and for a long time prior thereto had been, in the employ of the defendant in the capacity of a section hand; that as such employee it became and was the duty of plaintiff to go, under the direction of defendant's foreman, upon the tracks, trestles and bridges along defendant's right of way, inspect the same and to make such repairs thereon as might be necessary to insure the safety and security of the trains of the defendant, the employees and agents in charge and the passengers thereon.

"Plaintiff for cause of action states that on said November 21, 1906, while in the employ of defendant as aforesaid, he was ordered and directed by the foreman having charge of that part of defendant's track extending west from the city of Salisbury (and being that particular foreman under whom plaintiff was assigned to work) to go upon and along the track of defendant extending west from the city of Salisbury and inspect the same and make such repairs as might be necessary to said track and the trestles and bridges thereunder.

"Plaintiff further states that at a point about three miles west of the city of Salisbury, in said county of Chariton, along the line of defendant's line of railway, is a long trestle numbered by defendant No. 465, which trestle spans a ravine and is in length about seventy-five feet and in width about ten feet and

in height about fifteen feet. That at a point about six hundred feet east of said trestle is a public highway crossing over defendant's tracks and right of way. That defendant's track from said trestle extending east for more than a mile is level, straight and the track and right of way free from any and all obstructions that would shut out from the view of defendant's employees, operating its said cars as they approached said trestle from the east, said trestle or persons who might be thereupon.

"Plaintiff further states that on said November 21, 1906, in the course of his inspection of said track, he reached the trestle aforesaid; that upon said trestle and in about the center thereof he found loose joints caused by the bolts and clamps connecting the rails of the track becoming loose, a part of the bolts having fallen out and said track at said point, by reason thereof, in a very dangerous and defective condition. That plaintiff, in his efforts to repair and make safe said defect, while upon and in the middle of said trestle in a dangerous and perilous position, in full view of the servants of defendant in charge of its train approaching from the east at that time, and while in the exercise of due care and caution on his part and relying upon the defendant, its agents and servants in charge of its trains to do and perform the duty they owed him of warning him of the approach of said train, was struck and knocked from said trestle to the ground, the distance of fifteen feet, by the engine and freight cars of defendant composing its train No. 91, westbound. That plaintiff for the distance of more than one-half mile to the east of said trestle was in full view of the servants and agents of defendant in charge of said train, with ample time and opportunity on their part to have warned plaintiff of the approach of said train and put the same under control; that plaintiff in said perilous position was seen by the agents and servants of defendant in charge of said train, or by

the exercise of ordinary care on their part would have been seen by them for the distance of more than one-half mile to the east of said trestle.

"Plaintiff says that notwithstanding the public road crossing immediately east of said trestle and the duty of the defendant to warn plaintiff of the approach of said train, they carelessly and negligently ran over said crossing, onto said trestle and upon and against plaintiff without ringing the bell, sounding the whistle or giving any warning whatever of their approach to said crossing, the trestle or plaintiff.

"Plaintiff says that by reason of being struck by said engine and thrown from said trestle he was wounded, maimed and mangled; his shoulder, breast-bone and several ribs fractured and his shoulder and chest crushed, besides many bruises and cuts in and upon his body; that his injuries were of such a character as to render him unconscious, in which condition he remained several days.

"Plaintiff says that because of the injuries received by him and due solely to the negligence and carelessness of the defendant, its agents and servants as herein alleged, he suffered intense pain for many weeks; that he now suffers and will continue to suffer the same during his natural life; that he was confined to his bed and room for many weeks, thereby entailing upon plaintiff a heavy loss of time and earnings; that because of said injuries plaintiff has expended large sums of money and has contracted to pay large sums of money on account thereof for medicines and medical attention. That prior to said injuries plaintiff was an able-bodied man and capable of doing a man's work; that since said injuries and because thereof plaintiff's health has become permanently broken and destroyed, his earning capacity impaired and plaintiff rendered a permanent and helpless invalid and cripple for life.

"Wherefore, plaintiff prays judgment against

defendant in the sum of $20,000, and for all proper relief.''

'The answer was as follows:

"Now comes defendant and for its answer to plaintiff's first amended petition denies each and every allegation thereof, and further answering defendant says that if the said plaintiff was injured at all it was the result of his own negligence directly contributing thereto in remaining upon and near the tracks of the defendant in close proximity to a rapidly approaching train of cars upon defendant's railroad, when he saw, or by the exercise of ordinary care could have seen, said train, and, having fully answered, defendant prays to be discharged with its costs.''

The reply was a general denial.

On January 16, 1908, after both parties had announced ready for trial, and a jury having been called and qualified to try the cause, the pleading read and statements made, counsel for the defendant objected to the introduction of any evidence, for the reason that the petition did not state facts sufficient to constitute a cause of action.

This objection was by the court sustained, and the following judgment was rendered, to-wit:

"And now this cause coming on to be heard, come both the plaintiff and defendant, and both parties hereto announcing ready for trial, the following jury is called to try this cause, to-wit:

"G. T. Stone, J. M. Durrett, C. C. Young, E. A. Barksdale, A. R. Brightwell, August Rehkop, H. G. White, Geo. T. Lyons, Lenton Yeager, E. B. Hitt, John Yeagle and Ed Hawkins, twelve good and lawful men duly impaneled and sworn to well and truly try the issues of this cause.

"And now this trial having been begun the plaintiff takes a nonsuit with leave to move to set aside said nonsuit.

"It is therefore considered, ordered and adjudged

by the court that the plaintiff take nothing by his action herein, and that the defendant have and recover of the plaintiff its costs in this suit expended and that it have execution therefor."

In due time plaintiff filed a motion to set aside the nonsuit, and prayed the court to grant him a new trial, which was by the court overruled; and plaintiff appealed.

Thereupon plaintiff filed his affidavit for an appeal to this court, which was by the court granted.

I. The first proposition presented by this record for determination is, did the appellant take an involuntary nonsuit? Counsel for appellant insists that he did, while counsel for respondent insist that his nonsuit was voluntary, and, therefore, an appeal will not lie therefrom.

This insistence is predicated upon the following record entry, which constitutes a part of the judgment rendered in the cause, to-wit:

"And now this trial having been begun, the plaintiff takes a nonsuit with leave to move to set aside said nonsuit."

If that were all the proceedings that were had in that regard, then there would be great force in respondent's position; but that is not all.

The record also shows that after the parties announced ready for trial, the jury sworn and qualified to try the cause, a witness was placed upon the stand by appellant, and then counsel for respondent objected to the introduction of any evidence, for the reason that the petition did not state a cause of action. That objection was by the court sustained, and then appellant took the nonsuit before mentioned in the judgment.

If we read the judgment entry regarding the nonsuit in the light of the appellant's objection to the introduction of any testimony, and the court's action thereon, then it seems to us there is no substantial

basis upon which to predicate this insistence. After the ruling of the court that the appellant could not introduce any evidence under the petition, then there was nothing for him to do except to take a nonsuit with leave, or dismiss his case.

. The latter was not done, but the former was, and that, too, was accompanied by a request for leave to move to set same aside.

There is no other rational conclusion that can be drawn from those record entries, save and except that plaintiff took an involuntary nonsuit with leave to move to set the same aside.

We, therefore, rule this insistence in favor of the appellant.

II.    This brings us to the consideration of the main question involved in this appeal, and that is, does the petition state facts sufficient to constitute a cause of action? Counsel for appellant contends for the affirmative of this proposition, while counsel for respondent denies it.

This question can be better understood if we divide it into two propositions, namely, (a) does the petition state a cause of action under the humanitarian doctrine? and (b) does the petition state a cause of action at common law?

The petition, it should be remembered, contains but one count, and, of course, whatever cause of action, if any, stated, must be found in that court.

If plaintiff relied upon both common-law negligence and the humanitarian doctrine, then good pleading required that each should have been stated in a separate count in the petition, but that, of course, would be waived by pleading over, as was done here. And in passing, we suggest the point that probably those two causes of action could not be properly stated in the same petition, although stated in separate counts, for the reason that they are inconsistent with and re-

pugnant to each other. The humanitarian doctrine is bottomed upon the necessary concession that the plaintiff was at the time of the injury guilty of contributory negligence; but notwithstanding such negligence, the defendant by the exercise of ordinary care could have prevented the injury, but failed to do so. While upon the other hand, the common law rule of negligence absolutely bars plaintiff's right of recovery where his own negligence contributes thereto. In other words, the plaintiff could not at the time of his injury be guilty of negligence which contributed thereto, and at the same time be free of negligence in that regard.

(a). As to the proposition, does the petition state a cause of action under the humanitarian doctrine?

With commendable frankness counsel for appellant in open court in the argument of this cause stated that the petition was not bottomed upon the humanitarian doctrine, and virtually concedes that in printed argument. Since, however, this branch of the case was quite elaborately discussed by counsel in trying to distinguish it from the common law branch of the case, we will give it brief consideration.

We agree with counsel for appellant in stating that this suit is not based upon the last chance or humanitarian doctrine. This is true, for the reason that the petition affirmatively states that the appellant, at the time of his injury, was not negligent but was "exercising due care and caution" on his part at the time of his injury.

While it may not have been necessary for him to have made that allegation, nevertheless he does state the fact to be that he was not guilty of any negligence which contributed to his injury. This allegation is absolutely inconsistent with the humanitarian doctrine as announced by the text-writers and all the decisions of this State and elsewhere, wherever the rule has been enforced. [Krehmeyer v. Transit Co., 220 Mo. 639.] There is no case to the contrary that we have been able

to find, and in the very nature of the rule there could be none such.

In pleading common law negligence, the plaintiff need not state in the petition that he was free from contributory negligence, for the reason that contributory negligence is a matter of defense and must be pleaded and proven by the defendant to the reasonable satisfaction of the jury before it will bar plaintiff's right of recovery, except where the plaintiff pleads due care, and his evidence, or that of the defendant, shows that his negligence contributed to his injury. In other words, if in point of fact the plaintiff's negligence did directly contribute to his injury, and that fact is pleaded and put in issue and proven by either the plaintiff or defendant, it will bar plaintiff's right to a recovery. This is elementary, and the citation of authorities in support thereof would almost be a supererogation of labor. [Sissel v. Railroad, 214 Mo. 515.] In the light of the foregoing elementary rules of pleading, we must presume that the learned counsel who drew the petition in this case understood the nature of his cause of action, and attempted to state it according to those rules.

In order to state a good cause of action under the humanitarian doctrine, the allegation must be that the plaintiff was in a perilous position, and that defendant actually saw his peril in time to have averted the injury, and that it negligently failed to do so, and that in consequence thereof he was injured; or where the plaintiff's perilous position was not actually seen by the defendant, then the additional statement must be made, stating facts which show that the plaintiff was at a place where it was the duty of defendant to expect him to be, and that by the exercise of ordinary care he could have been seen by defendant in time to have prevented the injury; and not simply state conclusions of law. The charge of this petition in that regard is as follows: "The plaintiff for a distance

of more than one-half mile to the east of said trestle was in full view of the servants and agents of defendant in charge of said train, with ample time and opportunity on their part to have warned plaintiff of the approach of said train and put the same under control; that plaintiff in said perilous position was seen by the agents and servants of defendant in charge of said train, *or by the exercise of ordinary care on their part would have been seen by them for the distance of more than one-half mile.*"

If the petition had stopped with the allegation that the defendant saw the plaintiff in a perilous position in time to have prevented the injury, by the exercise of ordinary care, and failed to do so, and in consequence thereof he was injured, it would have stated a good cause of action under the humanitarian doctrine; but when the petition went further and charged that, "or by the exercise of ordinary care" the agents of defendant in charge of the train could have seen the plaintiff's perilous position in time to have prevented the injury, it stated him out of court so far as the humanitarian doctrine is concerned, for the reason that the petition does not state that the plaintiff was at a place where the defendant should have anticipated him, and, consequently, owed him any duty to be on the lookout for him; and in the absence of such duty, there could be no negligence in defendant's failure to discover plaintiff, even though his perilous position might have been easily and readily seen had the agents and servants in charge of the train been looking down the track toward him. [Frye v. Railroad, 200 Mo. 377; Ayers v. Railroad, 190 Mo. 228; Trigg v. Transit Co., 215 Mo. 521.] There are scores of other cases of like import decided by this court.

Counsel for appellant endeavor to escape the effect of the rule announced in those cases by saying that perchance the respondent has a rule which requires its trainmen to be on the lookout for trackmen

and other employees engaged upon bridges and trestles. That may be true in point of fact, but, even if true, it would be unavailing to the appellant in this case, for the reason that no such rule is pleaded or mentioned in the petition. When such a rule, or any custom or usage, is relied upon as a basis of recovery, it must be pleaded, as should any other material fact; otherwise, the court would be in the dark as to the nature of the plaintiff's cause of action, and the defendant could not know what issues it would be called upon to meet. [Degonia v. Railroad, 224 Mo. 564; Ring v. Railroad, 112 Mo. l. c. 230.]

Viewing this petition from any standpoint you may, it does not state a cause of action under the humanitarian doctrine.

(b). We now come to the consideration of the second branch of the case, namely, does the petition state a cause of action under the rule of common-law negligence?

The material charges made in the petition under this branch of the case are as follows: That the appellant at the time of his injury was a trackman in the employ of respondent, whose duty it was to inspect and repair the tracks upon which the latter's trains ran, and had been so employed for a number of years; that at the time of the injury he was engaged in tightening a bolt in the track on the trestle at a point where the track was straight, from which he could have been seen by the agents and servants in charge of the train for a distance of a half mile from the east in the direction from which the train which struck him came; that the agents in charge of the train saw, or, by the exercise of ordinary care, could have seen his perilous position in time to have prevented the injury, but negligently failed to do so; that while so engaged in said work he was "relying upon the defendant, its agents and servants in charge of its trains to do and perform the duty they owed him of warning him of the ap-

proach of said train;'' and that while so engaged and so relying upon the defendant, its agents and servants to warn him of the approaching danger, he was struck and injured.

By reading this petition it will be seen that it charges that the appellant, while performing his services, relied upon the defendant to perform the duty it owed him to look out for his safety and warn him of the approaching danger in time to have prevented the injury, and that it negligently failed to do so, and that in consequence thereof he was injured. That allegation of the petition is faulty, in that it simply states a conclusion of law, namely, that the defendant owed him the duty to look out for his safety while in the discharge of his duties, and to warn him of his danger.

In the absence of some rule, custom or usage of the company applicable to the appellant requiring it to be on the lookout for appellant and to warn him of his danger, the respondent owed him no such duty as charged in the petition; and as no such rule, custom or usage is pleaded, we must presume that none such existed.

It is the well settled law of this State, as shown by repeated adjudications of this court, that the agents and servants in charge of railway trains owe no duty to look out for the safety of trackmen and section hands. They are presumed to be familiar with the character of their employment, the schedules and time cards of trains, when due, and the dangers incident to such employment.

In Ring v. The Missouri Pacific Ry. Co., 112 Mo. l. c. 230, this court in considering this question, said: ''He [the deceased] had worked on the road for nine or ten years, with trains passing frequently during every day, and was familiar with all the dangers; no rules were shown which absolved the laborers from

watching for themselves for passing trains, or that imposed upon the foreman the duty of watching and warning them of the ordinary danger from passing trains. Under these circumstances a rule that would impose upon the master the duty of watching each individual workman, and warning him of the passing of every train, and of keeping him out of danger, would be an abrogation of the well-recognized and necessary rule, that the servant, when engaged in his master's service, assumes all the risks ordinarily incident to the discharge of the duties he undertakes to perform; and would make the master an insurer of the safety of his servants. It would be most unreasonable to require the master to keep a special watch over every employee, and warn him of every common danger to which he might be subjected in the performance of his ordinary duties, and the law does not require it. [Shearman & Redfield on Negligence, sec. 185; Jackson v. Railroad, 104 Mo. 456.] The judgment is for the right party and is affirmed.''

In the case of Sissel v. St. Louis & San Francisco Ry. Co., 214 Mo. l. c. 528, Judge GRAVES in speaking for the court, said: ''Nor does the plea of the humanitarian doctrine avail the plaintiff in this case. What in our·judgment should be the rule in this class of cases is well expressed by BURGESS, J., in Evans v. Railroad, 178 Mo. l. c. 517, whereat he says: 'But plaintiff claims that even if deceased was guilty of negligence, yet if defendant's employees in charge of the train became aware of his peril, or might, by the exercise of ordinary care, have become aware of it, in time to have enabled them by the exercise of ordinary care to have averted the injury, and they failed to exercise such care, plaintiff was entitled to recover. It will not do to apply this rule in all its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the

time at which trains pass, to look for them, and see them, and to move out of the way.' "

In Degonia v. Railroad, supra, l. c. 591, this court said: "The evidence fails to show such a user by the public of its railroad tracks between the crossing whistling-post and the public crossing, as would just-ify us in saying that the defendant was not entitled to expect a clear track. On the contrary the defendant had a right to expect a clear track until the public crossing was reached. Because section hands may be scattered along the railroad tracks from one station to the other, does not deprive defendant of the right to rely upon a clear track, and this for the reason that such employees are bound to look out for their own protection. The rule as to an employee is different from the rule applied to a passenger or stranger. [Cahill v. Railroad Co., 205 Mo. l. c. 408; Evans v. Railroad, 178 Mo. l. c. 517.]"

There are many other decisions of this court an-nouncing the same rule, and if they are worthy of re-spect and are to be followed, then the petition does not state a good cause of action under the common-law rule of negligence.

III. The petition does not state a cause of action for another reason, namely: that it shows upon its face that the appellant voluntarily assumed a perilous position on the trestle, and relied upon the respondent to discover his peril, and avoid injuring him, and that too when, as shown in paragraph two, it owed him no duty in that regard.

In discussing this question, this court, in the case of Davies v. People's Railway Co., 159 Mo. l. c. 6 and 7, said: "The plaintiff had no right to assume a place of danger upon defendant's tracks and deliberately en-gage in an undertaking in such a manner as to deprive himself of the benefit of the sense of sight and hearing, the common avenues through which the approach of danger is communicated, and trust that defendant's

agents in the course of their employment would be more considerate and watchful for his safety than he himself."

In applying the same rule in the Van Dyke Case, the late Judge Fox, in referring to the Davies Case, said that it was there "expressly ruled that it was gross negligence for persons to assume a place of danger upon railroad tracks and thereby trust that the agents of the railroad company in the course of their employment will be more watchful of the safety of persons assuming such dangerous positions than themselves." The same rule is announced in the following cases: Evans v. Railroad, 178 Mo. 517; Cahill v. Railroad, 205 Mo. 393; Brockschmidt v. Railroad, 205 Mo. 435; Clancy v. Railroad, 192 Mo. 615; Sharp v. Railroad, 161 Mo. 214; Sissel v. Railroad, 214 Mo. 515; Sims v. Railroad, 116 Mo. App. 572; Ross v. Railroad, 113 Mo. App. 600; Degonia v. Railroad, supra; Moore v. Railroad, 176 Mo. 544; Van Dyke v. Railroad, 230 Mo. 259.

We are, therefore, of the opinion that the petition does not state a cause of action, and that the circuit court properly sustained the demurrer thereto.

Let the judgment be affirmed. It is so ordered. *Lamm, J.,* concurs in the result in a separate opinion; *Graves, J.,* concurs in all of the opinion except what is said regarding the pleadings; *Valliant, J.,* absent.

## SEPARATE CONCURRING OPINION.

LAMM, J.—I agree to the first paragraph and to the result reached by my learned brother Woodson, but not to the doctrine that a case under the humanity rule and one for "common-law negligence" are inconsistent or cannot be stated in one count of a petition.

It is deemed best to state the grounds of concurrence and dissent.

In the Murphy Case, 228 Mo. l. c. 123, it was said

that a plaintiff "must plead his own negligence in order to invoke this doctrine"—meaning thereby the humanity doctrine—and the Krehmeyer Case, 220 Mo. l. c. 659, was cited as authority for that proposition. But the proposition announced in the Murphy Case was a blow leveled, *arguendo*, at the very life of the humanity rule in the minority opinion of my learned brother. It was not intended as in aid of the rule, nor was it intended as a formulation of the scope of the rule in its entirety as announced by this court.

Recurring to the Krehmeyer Case, what was *decided* by it (as contradistinguished from what was *said* in the principal or dissenting opinion) must be sought in the guarded language of the concurring opinion of our brother GRAVES, who cast the deciding vote as umpire and only agreed to the result on the grounds put by him in his concurrence. The crux of the Krehmeyer Case was in the instructions, not in the pleadings. Therefore, that case is no authority on pleading. The judgment in the Krehmeyer Case was reversed and the cause remanded as to one defendant, The Transit Company, because of error in ruling on instructions; and the concurring opinion of GRAVES, J., may be searched in vain for any pronouncement on the question of commingling in one pleading, or count, "common-law negligence" and facts constituting a cause of action under the humanity rule. His vote was to the effect that plaintiff's contributory negligence in that case was so well established that the jury should have been told he was guilty as a matter of law. Further, that the humanity doctrine should have been put to the jury, and, further, that if the court was "going to submit the question of contributory negligence at all," as it did do, then it should have given defendant's instruction on that head.

A petition may contain allegations so inconsistent and self-destructive that a motion to elect lies. [Jordan v. Transit Co., 202 Mo. 418; Behen v. Railroad,

186 Mo. 430; White v. Railroad, 202 Mo. 1. c. 557, *et seq.*] But to plead common law and statutory negligence and negligence predicated of the violation of an ordinance, and negligence arising from the last chance or humanity doctrine in one count, does not necessarily make a case of *felo de se.* See the White Case, supra, and authorities cited.

The contrary argument may be summed up in this way:

The humanity doctrine runs on the theory that plaintiff is negligent, but avoids the effect of his negligence by showing conditions bringing his case within the humanity rule. Therefore, there is such irreconcilable inconsistency between a cause of action based on the latter theory and one based on the theory that plaintiff was not negligent at all, that the two cannot stand together in the same count. But I can see no inconsistency at all in A saying to B, "You were negligent and I was not negligent; you hurt me, therefore I want damages; but if I were negligent, yet you saw my peril (or in certain cases where you owed a duty to look for me, you should have seen my peril), therefore, you are still liable to me for damages." There is no more inconsistency there than there is in A saying to B, "I signed no note to you, but if I did, I paid it off;" yet that was held a good plea. It is believed cases have always been disposed of in this court on the theory that it is good pleading to plead the wrong suffered (that is, the *injuria*) and then assign as many specifications of negligence as the pleader has—subject always to a motion to elect if they are inconsistent, and subject to a motion in arrest or for a new trial if a general verdict come in on two radically inconsistent grounds.

A fair test of a matter is to put the shoe on the other foot, or see if the other ox is gored. Attending to that: If defendant deny (as this very defendant did) its own negligence and then plead (as it also did) plain-

tiff's contributory negligence, shall we also hold that the plea of contributory negligence is bad when coupled with such denial, or that when contributory negligence is pleaded by defendant coupled with a denial of negligence, that those two pleas are inconsistent and cannot stand together? Observe, contributory negligence on the part of plaintiff, *ex vi termini,* assumes there was negligence on the part of defendant to which plaintiff's negligence contributed. Therefore, in one sense, although defendant deny its own negligence; yet when it pleads the contributory negligence of plaintiff, it thereby faces the other way and confesses its own negligence. Therefore, if a petition be bad which says plaintiff used due care and then, as another ground of recovery, goes on to state a case under the humanity rule (which proceeds on the theory he may have not used due care)—we say, if such petition be bad for inconsistency, then an answer by the same token is bad when defendant says it used due care and then goes on to say that plaintiff was guilty of contributory negligence. That phase of the matter was considered in the Peterson Case, 211 Mo. l. c. 518. And it was there pointed out that such construction of the stereotyped answer in negligence cases would be novel and perplexing.

I put concurrence on the ground that this plaintiff concedes by brief, and *ore tenus* at our bar, that his case is *not* under the humanity rule. When we consider his pleading from the standpoint of "common law negligence," to use that term as my brother does, it is clear that he places his right to recover on the theory that while he was at work on the trestle he owed no duty to himself to look out for himself, but had a right to rely on the trainmen looking out for him and giving crossing signal at the near-by crossing. He states his cause of action to be a violation of that duty and his own reliance on the performance of that duty. There is no general rule of law raising such general

duty. There might be a case on a long and high trestle where trackmen would be caught in the daytime verily as rats in a trap, where as a matter of humanity and common sense a duty was put on trainmen to look out for them. We can decide such a case when we have it. There might be other cases as stated by my brother, where a rule, order or custom obtained to look out for trackmen, working in a hazardous place. Then there is a class of cases where trackmen are seen to be in danger and seen to be oblivious to it, where an imperative duty arises to warn and if possible stop before running them down (when certain conditions are present). But the case at bar is not a case of any such character. It is one in which the plaintiff says he took no heed for himself at all and the reason he took no heed was that he counted on trainmen looking out for him and he relied on their giving a crossing signal. Now, the crossing signal is not intended for trackmen but for those using the crossing. [Degonia v. Railroad, 224 Mo. l. c. 592, *et seq.*] A general duty to run a train without negligence becomes a particular duty to no one until he is in a position to complain of the negligence. [Frye v. Railroad, 200 Mo. l. c. 407; Barker v. Railroad, 98 Mo. 54.]

It is quite universally held that on a steam railroad in the country, away from congested populations and between crossings, there is no general duty to look out for persons on the track and therefore (as a general rule) negligence cannot be predicated of mere failure to look. It arises, if at all, from a failure to act or warn after the peril is seen.

The pleading does not bring the case within that doctrine, and therefore, did not state a cause of action.